365 So.2d 704 (1978)
Dennis Wayne SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 49245.
Supreme Court of Florida.
November 9, 1978.
*705 Robert E. Pyle, Lake Alfred, for appellant.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is a direct appeal by Dennis Wayne Smith from his conviction in the Polk County Circuit Court for murder in the first degree and a sentence of death imposed by the trial judge.
After taking part in the murder of John Mitchell Arnsdorff, Wesley Johnson turned himself into the police. Eventually he was charged with two other murders, as well. In the meantime he implicated Smith in the Arnsdorff murder and, accordingly, Smith was indicated for first degree murder. Smith pleaded not guilty and the cause was set for trial. Before its start, Johnson pleaded nolo contendere to the three murders and was to be given concurrent life sentences in return for testimony against Smith, the sentences to be imposed after the testimony.[1]
Johnson testified to the following: He, Smith and a man named Wagner met at a bar and decided to rob a homosexual in order to obtain money for beer. The three then went to another bar where they met Arnsdorff. On the pretext of giving a party, they invited him to a shack Johnson was staying in. Arnsdorff and Johnson drove in Arnsdorff's car, Smith and Wagner in Smith's car. Johnson and Arnsdorff reached the shack first. Smith and Wagner had taken a wrong turn and were late, but Johnson kept Arnsdorff from leaving by showing him some silver casting equipment. When the former two arrived the men drank beer for a short while and then Johnson grabbed Arnsdorff while Wagner threatened him with an ice pick. While Arnsdorff was restrained Smith took Arnsdorff's wallet, in which there was $6.00, from his car and one of the three removed his wrist watch. They then forced Arnsdorff *706 into the trunk of his own car. Their intention was to abandon him in a remote spot. Wagner and Johnson, in Arnsdorff's car, were following Smith in his car when they ran into a bridge abutment, flattening a tire. (Throughout the night the three had been drinking heavily.) After an unsuccessful attempt to fix it, the two cars proceeded until the wheel with the flat tire came loose. One of the three opened the trunk and Smith hit Arnsdorff with a tire tool. Wagner then began to stab him with the ice pick. Believing Arnsdorff to be dead they shut the trunk with him in it and went to a gas station. Smith told Wagner to get some gas, which he did. They returned to Arnsdorff's car and at Smith's direction, Johnson doused it with gas and set it afire. (Expert opinion that Arnsdorff died from incineration or asphyxiation from smoke caused by the fire had been introduced into evidence earlier.)
At this point in Johnson's narration the court excused the jury to allow the defense to renew a pre-trial motion that testimony by Johnson as to a second murder by him and Smith be suppressed. The court denied the motion, as it had previously done, on the ground that the second murder, though separate from the first, was part, just as Arnsdorff's, of a single transaction,[2] the robbery, and, therefore, relevant to the Arnsdorff murder.
Johnson then testified that after burning the car he, Smith and Wagner immediately went to a swimming hole. An argument over division of the $6.00 and watch ensued between Smith and Wagner. Smith yelled to Johnson to grab Wagner, and while Johnson held him Smith stabbed him with the ice pick. At Smith's direction Johnson pulled Wagner into the swimming hole and held him under water to ensure his death. They transported his body elsewhere and buried it.
Smith took the stand in his own defense. He admitted that he was in the company of Wagner and Johnson on the night of the murder, but claimed that the robbery was their idea. Although he accompanied them to the second bar and left it with them and the victim, he testified that they drove him straight from the bar to his apartment, because he was too intoxicated by beer and drugs to do anything but sleep. That was the last, according to Smith, he saw of them that night. No evidence was introduced by the defense to corroborate the alibi.[3]

I. CONVICTION
There is sufficient evidence to sustain the jury's verdict of guilty. In addition to the direct evidence of guilt provided by Johnson's testimony there was considerable circumstantial evidence against Smith. It included testimony of observers at the second bar, which fit Johnson's story of what happened there better than Smith's. Further, Smith was linked to the scene of the crime by expert opinion that tire tracks found there were unquestionably of his car. And the same expert testified that tennis shoe tracks found at the scene could have been made by Smith's tennis shoes.
Smith argues, however, that reversible error was committed when Johnson's testimony as to the second murder was admitted. After careful consideration of the entire record, we hold that evidence of the second murder was properly admitted as part of a single transaction which spanned the night of, and included, Arnsdorff's murder.
Under the principle announced in Williams v. State, 110 So.2d 654 (Fla. 1959), evidence of collateral crimes committed by the defendant is admissible if relevant for any purpose except to show the bad character or criminal propensity of the accused. Thus, the relevance of testimony of the second murder is the crucial factor in determining its admissibility.
*707 Among the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire context out of which the criminal conduct arose. Ashley v. State, 265 So.2d 685 (Fla. 1972). In Ashley there was admitted evidence of four murders by the defendant which occurred during the robbery of a restaurant within two hours of the murder for which he was being tried. This Court found no error in the admission of the collateral murders and the conviction was upheld. The factual situation is similar to the one now before us and the result we reach is consistent with Ashley.
At trial the state's theory was that, as Johnson testified, the two murders occurred during one prolonged criminal episode. The three perpetrators met together and planned a robbery. The rest of the night was devoted to the robbery, its concealment, and the allocation of the proceeds. From the time the parties met and conspired to commit robbery, there was an unbroken chain of circumstances relating to and flowing from the robbery. Because of the robbery two related murders occurred within a short time of one another. Of the three men who committed the first murder, one was the victim of the second murder and the other two were his killers. Smith's car was used throughout the criminal episode and the same ice pick was used in the robbery and both murders. The second murder is clearly a part of the context surrounding the murder for which Smith was tried. Evidence of the murder of Wagner is therefore relevant to illustrate the criminal context in which the first murder occurred.
Additionally, the testimony concerning the second homicide is relevant to place Smith at the scene of the first, since it shows that he was with the people involved in the initial homicide just an hour after it took place. He was also placed by this evidence in a car which was directly linked to the scene of the first murder.

II. PENALTY
Having heard the evidence in the sentencing phase of the trial, the jury recommended that Smith receive the death penalty. The trial court concurred and imposed the sentence of death upon Smith. In his findings of fact upon the sentence, the trial judge stated:
"1. I find that this capital felony was expecially henious, atrocious and cruel. The evidence establishes that the Defendant, Dennis Wayne Smith, approached the deceased, John Mitchell Arnsdorf, for the purpose of robbing him after the fashion known as "rolling a queer". That pursuant to this design, the Defendant, Dennis Wayne Smith, caused the said John Mitchell Arnsdorf to be confined in the trunk of his (John Mitchell Arnsdorf) own vehicle at the point of an icepick and on pain or threat of death. That the said John Mitchell Arnsdorf was thereupon transported in the trunk of his own automobile, to a secluded location. While enroute, the vehicle in which the said John Mitchell Arnsdorf was being transported, was involved in a severe accident, disabling the right front wheel of the vehicle. Thereafter, the vehicle was driven to its final location by skidding or gouging the right front metal rim along the roadway. The vehicle finally came to a resting place in a secluded area because the right front wheel became embedded in the wet earth.
"The Defendant, Dennis Wayne Smith, then opened the trunk of the disabled vehicle, and after some conversation, began beating John Mitchell Arnsdorf about the head with a tire tool. Thereupon and in concert, an additional participant, James Wagner, Jr., began stabbing John Mitchell Arnsdorf with an icepick. The trunk was closed with the person of John Mitchell Arnsdorf still alive reposing therein. The three participants in this robbery then went to a service station and obtained a quantity of gasoline. They returned to the vehicle, containing the living person of John Mitchell Arnsdorf, and saturated the said vehicle, after which it was lighted, resulting in the death and cremation of the person and body of John Mitchell Arnsdorf.

*708 "It was established by competent medical evidence that the said John Mitchell Arnsdorf died by asphyxiation, caused by the fire, and that he was alive while being cremated in a secure enclosure, from which there was no hope of escape, all of which was the design and at the principal direction of the defendant, Dennis Wayne Smith, herein.
"That the sum total proceeds of the robbery of the person of John Mitchell Arnsdorf, amounted to $6.00 and a watch."
The trial court found no mitigating circumstances.
We agree with the trial judge that the death sentence is warranted by the facts of this case.
Since Johnson did not receive a death sentence, Smith argues that the death sentence was improperly imposed upon him. He relies upon this Court's decision in Slater v. State, 316 So.2d 539 (Fla. 1975), in support of his position.
We find that this case is not controlled by Slater, wherein the "trigger man" received a life sentence while Slater, an accomplice who did not have the murder weapon in his hand, received the death penalty. We reduced Slater's sentence to life. As evidenced by the record and the express findings of the trial judge, Smith's culpability in the murder of Arnsdorff was much greater than that of Johnson. Smith originated the idea and directed Johnson to pour gasoline on the vehicle containing Arnsdorff and to ignite the vehicle. The record in no way suggests that Smith was acting under Johnson's domination. To the contrary, Johnson was dominated by Smith on this particular evening. We find that, under the peculiar circumstances of this case, the disparity in sentences between Smith and Johnson is justifiable and is neither unreasonable nor capricious.
Accordingly, the judgment and sentence are affirmed.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, J., dissents with an opinion, with which ENGLAND, C.J., and HATCHETT, J., concur.
SUNDBERG, Justice, dissenting.
I respectfully dissent. I firmly believe that it was reversible error to admit the testimony of the witness Johnson concerning the second homicide. Neither the principle of res gestae nor the rule announced in Williams v. State, 110 So.2d 654 (Fla. 1959), supports the admissibility of Johnson's testimony under the facts of this case. Any ostensible probative value of Johnson's testimony concerning the second homicide which bears upon the guilt of the appellant for the first homicide is so far outweighed by its prejudice to the defendant that it should not have been admitted into evidence. Accordingly, I would reverse the judgment of guilt, set aside the sentence of death, and remand this case for a new trial.
ENGLAND, C.J., and HATCHETT, J., concur.
NOTES
[1] Trial transcript, pp. 119-120.
[2] This ground for admissibility is frequently referred to as "res gestae."
[3] Smith testified that his girlfriend was asleep at the apartment. Although she testified for the state on rebuttal she neither confirmed nor rebutted Smith's alibi testimony.