447 So.2d 210 (1984)
Robert D. HEINEY, Appellant,
v.
STATE of Florida, Appellee.
No. 56778.
Supreme Court of Florida.
February 2, 1984.
Rehearing Denied April 19, 1984.
*211 Michael E. Allen, Public Defender, and Michael M. Corin, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Miguel A. Olivella, Jr., and Lawrence A. Kaden, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Robert Heiney appeals his convictions for first-degree murder and robbery with a deadly weapon and his sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. Having reviewed the record and considered the issues presented by Heiney, we find no reversible error and affirm his convictions and sentences.
On June 4, 1978, Heiney was residing in Houston, Texas, with Lawanna Wickline, Terry Phillips, and David Benson. On that date, after fighting with his girl friend, Lawanna Wickline, Heiney shot Terry Phillips in the abdomen. Wickline called the police. Upon learning that Phillips was in critical condition and that the police had been notified of the shooting, Heiney requested Benson to give him a ride out of town. Benson drove him to near the Texas state line. Heiney told Benson he was broke and that he planned to hitchhike to Florida. Benson gave Heiney $4.
Heiney was next seen in Jackson, Mississippi, at approximately 4 p.m. on June 5, 1978, in the company of the victim, Francis M. May, Jr. They went to the victim's mother's house where they remained for a brief period of time. They left with Heiney driving the victim's car. The victim's mother and his wife later positively identified Heiney as having been with the victim the day prior to his death. They both testified at trial.
On June 6, 1978, the victim's body was found a quarter of a mile south of the I-10 entrance on highway 189 near Holt, Florida. His head had been savagely beaten. A claw hammer was found just west of the body. The victim's wounds were consistent with a beating with the claw hammer. The medical examiner testified that the death was recent, probably occurring somewhere between 5 and 7 a.m., June 6. There were at least seven blows to the head and perhaps nine. There were also defensive wounds on the back side of the victim's hands and wrists. At the time of his death, the victim had a blood alcohol content of .28 percent. He died as a result of brain injury due to severe blows delivered to both sides of his skull. The victim's pant pocket had been turned inside out, and he had no identification on him.
On June 8, 1978, the investigating officer gave information on the victim's vehicle to the National Crime Information Center in Washington.
In the meantime, Heiney was driving back and forth across the country using the victim's credit card to buy gasoline, food, and lodging. On June 12, 1978, still driving the victim's car, he went to the Nevada National Bank in Reno, Nevada, and attempted to get a $75 cash advance by using the victim's Mastercharge card. When the teller at the bank began checking *212 for approval of the advance, Heiney left, leaving the credit card behind. The teller followed Heiney and got the license tag number from the car he was driving and reported it.
Then on June 26, 1978, an Ohio state trooper saw Heiney driving the victim's car on the interstate in Ohio. He arrested Heiney for unauthorized use of an automobile (auto theft) and impounded the car. When Heiney was arrested, he had in his possession the victim's personal property including a ring the victim's wife had given him when they were married. Sheriff's deputies from Okaloosa County went to Ohio and, pursuant to a search warrant, searched the car. They found the victim's checkbook in the car's glove compartment, another credit card belonging to the victim, other papers belonging to the victim, and bloodstains matching the victim's blood type in the car. The victim's wallet was found inside Heiney's suitcase which was in the trunk of the car.
Mastercharge slips made on the victim's credit card signed after the victim's death came in from all over the country. A handwriting expert testified that the signatures on some of the credit card receipts from June 6 to June 26 could be positively identified as being forged by Heiney.
Heiney was tried and convicted of murder in the first degree and robbery with a deadly weapon. At the close of the state's case, he moved for judgment of acquittal as to both counts of the indictment. He contended that the circumstantial evidence introduced was insufficient to support verdicts of guilty for either of the crimes charged. The trial court denied the motion and submitted the case to the jury. This issue was raised again in a motion for new trial, which the trial court also denied.
During the penalty phase of the trial, the jury recommended that a life sentence be imposed. The trial court, finding three aggravating and no mitigating circumstances, imposed the death penalty.
Heiney initially challenges his convictions on the basis that the trial court erred in denying his motions for judgment of acquittal and for new trial. He argues that the circumstantial evidence was not legally sufficient to support the jury verdicts in that the evidence does not exclude the hypothesis of innocence that someone else killed the victim and that Heiney lawfully gained possession of the victim's property prior to his death.
When a case is based on circumstantial evidence, a special standard of sufficiency of the evidence applies. Jaramillo v. State, 417 So.2d 257 (Fla. 1982). This standard is: "Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977); Jaramillo v. State; McArthur v. Nourse, 369 So.2d 578 (Fla. 1979). The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse a judgment based upon a verdict returned by the jury. Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). In the present case, we find the evidence supports the jury's verdict that Heiney was guilty of first-degree murder and robbery. The victim was with Heiney just before he was murdered. His pant pocket where he normally carried his wallet was turned inside out. His wallet, as well as his personal belongings and his car were in Heiney's possession at the time of Heiney's arrest. Blood of the victim's blood type was found on the front seat covering and on a portion of the rear seat cover. The victim's body was completely stripped of everything of value, and Heiney was found in possession of everything of value which the victim had with him. We hold that the trial court properly denied Heiney's motions for judgment of acquittal and for new trial.
Heiney next argues that he was deprived of a fair trial when the court allowed the state to present the testimony of Lawanna *213 Wickline, Terry Phillips, and David Benson who testified that Heiney argued with Wickline, argued with Phillips and subsequently shot Phillips in the abdomen with a .32 calibre pistol and that Heiney, upon learning of Phillips' critical condition and that the authorities wanted to talk to him, asked Benson to drive him out of town and to give him money since he was broke. Benson also testified that Heiney told him he was going to hitchhike to Florida.
Heiney contends that the conduct shown by the testimony was unrelated to the crimes he was accused of committing and that this evidence tends to prove only propensity and bad character. The state responds that the evidence of the shooting in Texas was relevant to show motive for the subsequent crimes and to provide the "entire context of the crimes charged."
We agree with the state that this testimony was properly allowed into evidence. The test for admissibility of evidence of collateral crimes is relevant. In Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), we described this test of relevancy and said:
In Williams v. State, [110 So.2d 654 (Fla. 1959)], we announced a broad rule of admissibility based upon relevancy. Necessity has never been established by this Court as an essential requisite to admissibility. In Williams, we declared that any fact relevant to prove a fact in issue is admissible into evidence even though it points to a separate crime unless its admissibility is precluded by a specific rule of exclusion. We further held that evidence of collateral offenses is inadmissible if its sole relevancy is to establish bad character or propensity of the accused. We emphasized that the question of relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible, but that nonetheless relevancy is the test. Evidence of other crimes is relevant if it casts light on the character of the crime for which the accused is being prosecuted. For example, this evidence is relevant when it shows either motive, intent, absence of mistake, common scheme or plan, identity, or a system or general pattern of criminality. Subsequently, in Williams v. State, 117 So.2d 473 (Fla. 1960), we reaffirmed the rule of admissibility enunciated in our first Williams case but reversed a defendant's conviction because the State had made a collateral offense a feature instead of an incident of the trial... . Thereafter, in Wilson v. State, 330 So.2d 457 (Fla. 1976), we held that the introduction of six hundred pages of trial transcript pointing to separate crimes committed by the defendant was not reversible error because this evidence was relevant to establish a pattern of conduct similar to the conduct for which defendant was being prosecuted.
In Ashley v. State, 265 So.2d 685 (Fla. 1972), defendant sought reversal of a murder conviction because the trial court admitted evidence of four other murders that he had committed shortly after the murder for which he was tried. We held that the evidence objected to was admissible because it was relevant to the issues of motive, intent, identity, and modus operandi of defendant. We reached this conclusion even though this evidence may not have been necessary to the State's case since Ashley's confession was in evidence as was the testimony of an eyewitness to the murder. We emphasized: "So long as evidence of other crimes is relevant for any purpose the fact that it is prejudicial does not make it inadmissible. All evidence that points to a defendant's commission of a crime is prejudicial. The true test is relevancy." 265 So.2d at 694. See also Antone v. State, 382 So.2d 1205 (Fla. 1980); Brown v. State, 381 So.2d 690 (Fla. 1980); Alford v. State, 307 So.2d 433 (Fla. 1975).
In our recent decision of Smith v. State, 365 So.2d 704 (Fla. 1978), relying upon Ashley v. State, we recited that among the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire *214 context out of which the criminal action occurred.
397 So.2d at 279-80.
Applying this test, we find that the collateral crime evidence was relevant and admissible. It was relevant to show motive for the subsequent crimes and to establish the "entire context" of the crimes charged. This evidence is relevant to show that Heiney's desire to avoid apprehension for the shooting in Texas motivated him to commit robbery and murder in Florida so that he could obtain money and a car in order to continue his flight from Texas. He had no transportation, no money, and was running from a possible murder. He was desperate. Because this evidence is clearly relevant and admissible, Heiney's contention that its introduction constitutes reversible error is without merit.
A closer question is presented by testimony relating to Heiney's lifestyle and his relationship with Lawanna Wickline. Any error which may have occurred in admitting this particular testimony, however, was harmless.
Heiney also argues that the trial court erred in not denying his motion for mistrial which was based on his allegation that some of the jurors may have momentarily seen him in chains on two occasions while he was being transported to and from the courtroom. His counsel was asked by the court whether he wanted to question the jury as to whether they had seen Heiney in shackles outside the courtroom, and he responded in the negative. The trial court denied Heiney's motion and stated that if any of the jurors even saw Heiney, it was only for a fleeting moment in the corridor. We rejected a similar contention in Neary v. State, 384 So.2d 881 (Fla. 1980), wherein defendant on appeal argued that he was prejudiced because some jurors inadvertently saw him being brought to the courtroom in handcuffs. We recognized the holding in Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), that an individual accused of a crime cannot be forced over his objection to stand trial in prison garb, but we held: "This appellant, however, was not forced to stand trial in prison clothes or in handcuffs, and we find that the inadvertent sight of the appellant in handcuffs was not so prejudicial that it required a mistrial." 384 So.2d at 885. We likewise find that in the present case the inadvertent sight of Heiney, if in fact he was seen by some of the jurors, was not so prejudicial as to require a mistrial.
We find no merit to Heiney's contention that the trial court reversibly erred in denying his oral motion to recuse the judge on the basis of alleged remarks made by him during a pretrial hearing. Heiney alleged that the trial judge had threatened Heiney in such a manner as to cause him to believe the judge was prejudiced against him. This pretrial hearing was reported, but no such prejudicial comments appear in the record. Heiney suggests that these comments were "off the record."
Florida Rule of Criminal Procedure 3.230 clearly sets out the procedure which a party must follow when seeking to disqualify a judge assigned to try the case on the grounds that the judge is prejudiced against the movant. This rule provides:
(b) Every motion to disqualify shall be in writing and be accompanied by two or more affidavits setting forth facts relied upon to show the grounds for disqualification, and a certificate of counsel of record that the motion is made in good faith.
(c) A motion to disqualify a judge shall be filed no less than 10 days before the time the case is called for trial unless good cause is shown for failure to so file within such time.
Heiney's motion was not in writing and was not accompanied by two or more affidavits setting forth the facts relied upon to show a basis for disqualification, nor did his counsel file a certificate that the motion was made in good faith. It was therefore legally insufficient. Moreover, reviewing the denial of this oral motion for disqualification in light of the entire record, we find no reversible error.
*215 We have considered Heiney's challenges to two of the jury instructions in the context of all the jury instructions given and in light of the record before us and conclude that they do not amount to reversible error.
Although Heiney was indicted for premeditated and felony murder, he argues that it is likely that the jury based its verdict on the felony murder rationale. Therefore, relying on State v. Pinder, 375 So.2d 836 (Fla. 1979), he contends his conviction for robbery should be reversed on the basis that to convict him of both crimes would violate the double jeopardy clause of the United States Constitution as applied to the states through the fourteenth amendment. Pinder was receded from in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), in light of the later United States Supreme Court decisions of Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In Hegstrom, we held that where a defendant is convicted of felony murder, he may be convicted but not sentenced for the underlying felony. If there is sufficient evidence to support a finding by the jury of premeditated murder, however, this previously stated principle announced in Hegstrom does not apply. McCampbell v. State, 421 So.2d 1072 (Fla. 1982); Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). In the present case, Heiney was charged with premeditated murder and felony murder. There is sufficient evidence of premeditation. There were at least seven blows to the victim's head inflicted by a claw hammer. The medical examiner testified that any three of the wounds would have been sufficient to render the victim unconscious. Three blows would have been sufficient for Heiney to effect his objective of robbery, if this had been his only objective. But he continued to beat the victim on both sides of his head until his brain was pulped, his ear was lacerated and only hanging on by a fragment, his skull was severely fractured, and his eye was completely exploded. Premeditation may be established by circumstantial evidence. Evidence from which premeditation may be inferred include the manner in which the homicide was committed and the nature and manner of the wounds. McKennon v. State, 403 So.2d 389 (Fla. 1981); Welty v. State, 402 So.2d 1159 (Fla. 1981). Thus, because the jury need not have convicted Heiney of robbery in order to support the murder conviction, we affirm the conviction and sentence for robbery.
In addition to reviewing the record in light of the errors asserted by Heiney, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. Accordingly, we affirm his convictions.
Heiney also challenges his sentence of death imposed by the trial court after the jury had recommended that a life sentence be imposed.
As aggravating circumstances, the trial court found that Heiney was under sentence of imprisonment, that the murder was committed while Heiney was engaged in the commission of a robbery, and that the murder was heinous, atrocious, or cruel. The court found that there were no mitigating factors to overcome the aggravating factors.
We have previously rejected the argument now being made by Heiney that for the judge to reject a jury's recommendation of life constitutes double jeopardy. Phippen v. State, 389 So.2d 991 (Fla. 1980); Douglas v. State, 373 So.2d 895 (Fla. 1979).
We have also previously rejected the argument that being on parole is not equivalent to being "under sentence of imprisonment." Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); McCampbell v. State.
We find no merit in Heiney's assertion that the trial court erred in finding the aggravating circumstance that the bludgeoning murder of the victim in this case was heinous, atrocious, or cruel. The *216 record amply supports this finding. Seven severe hammer blows were inflicted on the victim's head. The medical examiner testified that the injuries to the victim's hands were probably defense wounds caused by the victim's holding his hands up to try to protect himself. See Adams v. State, 341 So.2d 765 (Fla. 1976), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977).
We also find no merit to Heiney's assertion that the trial judge considered the Texas shooting of Phillips by Heiney as a nonstatutory aggravating factor. The trial judge expressly stated that he did not consider this as an aggravating circumstance. Here there are three valid aggravating factors and no mitigating factors. We can conclude on the basis of the record before us that, even if we were to find that the court improperly considered this nonstatutory aggravating factor, elimination of this factor from the weighing process could not possibly affect the trial court's decision to impose the sentence of death.
We hold that the trial court properly found three aggravating and no mitigating factors. Reviewing this case in light of other cases in which the death sentence has been imposed, we conclude that the sentence of death in this case is not too great a punishment. Applying the test announced in Tedder v. State, 322 So.2d 908 (Fla. 1975), we also conclude that the facts in this case suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ.
Accordingly, finding no reversible error, we affirm the convictions and sentences.
It is so ordered.
CONVICTION: ALDERMAN, C.J., and ADKINS, OVERTON and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion with which McDONALD, J., concurs.
McDONALD, J., dissents with an opinion.
SENTENCE: ALDERMAN, C.J., and ADKINS, OVERTON and EHRLICH, JJ., concur.
McDONALD, J., concurs with an opinion.
BOYD, J., dissents with an opinion with which McDONALD, J., concurs.
BOYD, Justice, dissenting.
I must dissent to the majority opinion. It was error to allow the presentation of evidence showing that appellant used to beat his girlfriend regularly and had lived on her earnings as a prostitute. It was also error to admit evidence that appellant shot a man in Texas four days prior to the murder of which he was accused in the present case. Evidence of these matters was irrelevant because it had no logical bearing on any of the material issues of the case. Even giving the state the maximum benefit of any slight doubt (of which there is actually none) on the issue of relevancy, I would still find the evidence inadmissible on the ground that its improper prejudicial impact far outweighed any arguable probative value it may have had on a material issue. When a court allows the admission of irrelevant evidence of serious unrelated criminal behavior on the part of the accused, tending to depict him as a person of bad character or having a propensity to commit crimes, such evidence must be presumed to have had impact on the jury to the detriment and improper prejudice of the accused. Straight v. State, 397 So.2d 903, 908 (Fla.) cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). I therefore conclude that appellant's conviction should be reversed and the case remanded for a new trial.
Any evidence that is relevant to some issue of material fact, unless barred by some specific rule of exclusion, is usually admissible. McCormick, Evidence § 184 (2d ed. 1972); 1 Wharton's Criminal Evidence § 151 (13th ed. 1972). Relevancy is that quality of evidence that gives it some logical bearing upon  and some probative value in deciding  an issue of material fact. McCormick, Evidence § 185 (2d ed. 1972). Evidence that is not relevant is inadmissible and should be excluded upon timely objection.
One species of irrelevant evidence that has given rise to much judicial concern is evidence of criminal conduct or activity of a *217 criminal nature other than that which is charged in the indictment or information. Evidence of crimes and wrongful acts of the accused that are separate and independent from the crime charged and which have no connection therewith is, like other irrelevant evidence, inadmissible. Winstead v. State, 91 So.2d 809 (Fla. 1956); Wallace v. State, 41 Fla. 547, 26 So. 713 (1899). Such evidence of collateral crime on the part of the accused may "prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty." Nickels v. State, 90 Fla. 659, 685, 106 So. 479, 488 (1925).
Of course, it may well be that the evidence which shows some criminal conduct other than that for which the accused is on trial is also relevant to an issue of material fact. If so, then the evidence is admissible even though it points to the commission of a separate crime. Ashley v. State, 265 So.2d 685 (Fla. 1972); State v. Norris, 168 So.2d 541 (Fla. 1964); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The judicial concern referred to above, however, is that the collateral crime evidence will serve only to show criminal propensity or bad character with resulting improper prejudice to the accused. Therefore Florida law seeks to assure the relevancy of such evidence by requiring that it fit into one of several judicially recognized evidentiary categories, such as motive, intent, opportunity, common scheme or plan, identity, absence of mistake, or the like. See, e.g., Dean v. State, 277 So.2d 13 (Fla. 1973); Hawkins v. State, 206 So.2d 5 (Fla. 1968); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The list of categories is not absolute or all-inclusive since its purpose is to help courts determine whether the evidence has some logical bearing on a factual issue.
The state argues and the majority finds that the events in Texas were part of the res gestae of the crime and were admissible to show the "entire context" of the criminal episode, as that concept was used in Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), and Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). Both cases are distinguishable. Smith was a first-degree murder case, and the collateral crime there was also a murder. The collateral murder occurred on the same night as the murder charged. The victim of the collateral murder had been one of the perpetrators of the murder charged. He was killed when the murderers argued over the initial victim's property. Evidence of the collateral murder placed the accused at the scene of the crime charged and placed him in a car linked to the scene of the crime charged. The later murder shed light on the motive for the earlier murder. In view of all these factors, the Court could conclude that the two crimes were linked by an "unbroken chain of circumstances" and that the collateral crime evidence was "relevant to illustrate the criminal context in which the first murder occurred." Id. at 707. Ruffin is similarly distinguishable. Smith and Ruffin do not stand for the proposition that any matter in chronological proximity to the crime charged is relevant and admissible. To be part of the "entire context," evidence must be linked to the issues by logical relationship. Ashley v. State, 265 So.2d 685 (Fla. 1972); Suarez v. State, 95 Fla. 42, 115 So. 519 (1928).
In the present case, there was no logical connection between the shooting and other events in Texas and the crimes of which appellant was accused. Unlike Smith, here the victims of the collateral crimes were not involved with the crimes charged. The collateral crimes did not occur at the same time or place, or involve the same group of people as the crimes charged. Therefore the evidence pertaining to the criminal events in Texas were not admissible as part of the "entire context" of the crimes for which appellant was on trial.
The state argues and the majority finds that the evidence of the shooting in Texas was relevant to show appellant's motive for *218 committing the murder in Florida: to acquire money, credit cards, and a car as means to escape apprehension. The state relies on State v. Statewright, 300 So.2d 674 (Fla. 1974). There the Court held that evidence that the defendant had committed a homosexual act five years before the crime charged was relevant to show a motive for the murder. The theory of the prosecution was that the defendant killed the victim to prevent him from revealing the earlier homosexual relationship. Therefore the prior act was held to be relevant to the question of the motive for the killing. In a number of cases, evidence of prior criminality has been held relevant to the question of motive for the murder of a police officer. See, e.g., Johnson v. State, 130 So.2d 599 (Fla. 1961); Mackiewicz v. State, 114 So.2d 684 (Fla. 1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960); McVeigh v. State, 73 So.2d 694 (Fla.), appeal dismissed, 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954). In these cases, evidence of the prior crime was relevant to show the reason for the defendant's wish to avoid encountering the police officer and being apprehended. The present case is distinguishable as far as motive is concerned. Here there was no evidence that the victim knew about the shooting in Texas, nor was he in a position of authority to arrest appellant on suspicion of it.
I therefore conclude that the testimony about the shooting incident in Texas, appellant's other violent acts there, and his relationship with his girlfriend were not relevant to any material issue of fact in his trial for the murder and robbery of Francis May in Florida. The admission of the evidence over defense counsel's objection was error. Since the only function the evidence could have served was to indicate that appellant was of bad character and had a propensity to commit crime, I would find that the error was prejudicial and deprived appellant of a fair trial.
Even assuming that appellant's prior criminal conduct was relevant to this case, I do not believe it should have been admitted because any probative value it may have had was far outweighed by its prejudicial impact. Even when evidence of collateral criminal conduct has some relevancy to a material fact in issue, it is error to allow an improper prejudicial effect to outweigh the limited probative value of the evidence. Smith v. State, 365 So.2d 704, 708 (Fla. 1978) (Sundberg, J., dissenting), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Williams v. State, 117 So.2d 473 (Fla. 1960). This is merely an application of the general rule that where improper prejudice outweighs probative value, even relevant evidence should be excluded. § 90.403, Fla. Stat. (1979); 1 Wharton's Criminal Evidence § 151 (13th ed. 1972).
In this case the prosecution relied heavily upon the prejudicial impact of the testimony about appellant's beating his girlfriend and living on the money she earned as a prostitute. It relied even more heavily on the evidence of his shooting another person in Texas and fleeing from that state. The prosecution emphasized these crimes in its closing arguments to the jury. Since the relevancy of these crimes to appellant's motive for committing the murder is purely speculative, and the prejudicial impact extremely great, the evidence should not have been admitted.
I note that the apparent facts of the robbery and murder are such that the capital felony of murder could be deemed to warrant the death penalty. However, because appellant did not receive a fair trial on the question of his guilt or innocence, the question of the appropriate penalty is purely a hypothetical one upon which I need not express an opinion.
I dissent to the affirmance of appellant's conviction and would order a new trial.
McDONALD, J., concurs.
McDONALD, Justice, dissenting in part, concurring in part.
I dissent for the sole reason that it was prejudicial error to allow into evidence testimony surrounding the Texas shooting of *219 Phillips and of Heiney's relationship with Wickline. I see no relevance in this testimony at all, and it was clearly prejudicial. The majority opinion is grasping at suppositions to make the testimony relevant. If relevant, this relevance is so minute that it must yield to the prejudice caused by this evidence. I would grant a new trial. On all other issues, including the imposition of the death penalty, I concur.