489 So.2d 860 (1986)
Shirley Ann JEFFERSON, Appellant,
v.
STATE of Florida, Appellee.
No. BI-38.
District Court of Appeal of Florida, First District.
June 6, 1986.
*861 Clyde M. Collins, Jr., of Cotney & Collins, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
SHIVERS, Judge.
This is another case in which the trial court imposed a sentence outside the range recommended by the sentencing guidelines. We reverse and remand for resentencing on the basis that the court used impermissible reasons for departure.
The appellant, Shirley Jefferson, is a 25-year-old mother of three children. On June 28, 1984, she was charged with the second-degree murder of her two-year-old daughter, Priscilla. An amended information was later filed, on January 18, 1985, reducing the charge to manslaughter. Jefferson entered a plea of guilty to manslaughter, and a sentencing hearing was held on August 2, 1985.
According to the evidence presented at the hearing, appellant was attempting to toilet train Priscilla at the time the incident occurred which led to her death. At around 8:30 P.M. on June 13, 1984, she became frustrated with Priscilla and spanked her about her body with a leather belt containing two metal "snaps." She then placed both the child and the training toilet into the bathtub. After this point, the evidence differs as to whether Priscilla hit her head as a result of appellant's actions, or whether she was injured independently.
A statement given by Jefferson to the Duval County Sheriff's Department on June 14, 1984, was introduced into evidence at the hearing. According to the statement, appellant "lost her temper" and "shoved" Priscilla with both hands, causing her to hit her head on the tub faucet. In attempting to stand up, Priscilla fell a second time, hitting her head on the side of the tub. Appellant stated she then took Priscilla out of the tub and laid her on the living room sofa, from which she fell and struck her head a third time.
Also introduced into evidence were the reports of Psychiatrist Miller and Clinical Psychologist Legum, both of whom independently examined Jefferson after the incident. The statement given by appellant to Miller was essentially the same as that given to the Sheriff's Department, with the exception that appellant stated she was in the kitchen when she heard Priscilla fall. According to appellant, she checked Priscilla, went back to the kitchen, and heard her fall again. Only after the second fall did she take Priscilla out of the tub and place her on the sofa. Appellant related to Dr. Legum that she pushed Priscilla forward to disengage her from her toilet seat, and at that time Priscilla slipped and fell against the tub faucet.
In any event, it is undisputed that after the injuries occurred, at approximately *862 10:30 P.M., appellant put the child to bed. She checked her at 2:00 A.M. and found her to be normal. When she checked her a second time at 6:00 A.M., Priscilla was "cold and stiff." Appellant wrapped her in a blanket and carried her two miles to University Hospital in Jacksonville, where she was pronounced dead.
According to the testimony of the medical examiner, Dr. Lipkovic, the child's body displayed numerous contusions, consistent with the shape and size of the metal "snaps" on the belt. An autopsy revealed that there were also four or five amorphous, or shapeless, contusions to the brain. Lipkovic testified that these contusions would not have been caused by a belt, or by a slip in the bathtub or by a fall off of a bed, but would normally necessitate the fleshy part of an adult's hand and the use of a large amount of force. He stated that, had the child been taken immediately to a hospital and treated by a neurosurgeon, there was an "outside possibility" that she might have lived. The cause of death was stated to be "head injury resulting from multiple blunt trauma."
In a seventeen-page written sentence, the trial court summarized the evidence presented at the hearing, made comparisons of the statements given by Jefferson to the Sheriff's Department, Miller, and Legum, and reached several conclusions. Despite a recommended sentence of three to seven years, the court imposed a sentence of fifteen years and listed the following items as reasons for departure:
The maximum sentence for the crime of manslaughter is fifteen years, but the recommended guideline sentence for killing this helpless 20-month old tot is three to seven years. This recommended guideline sentence trivializes the value of human life.
The helpless infant looked to the defendant for love, care and protection, but the defendant betrayed that sacred trust and brutally killed little Priscilla.
The beating of the child by the defendant was savage and brutal causing cuts, punctures and contusions on the child's face, body, buttocks, vaginal area and legs.
After inflicting the mortal injuries, the defendant did not seek medical treatment and thus the child died.
Dr. Lipkovic testified that had the child been immediately taken to the emergency room there was an outside chance the child might have lived.
We agree with appellant that the court's use of impermissible reasons for departure from the guidelines warrants reversal. The court's first reason, that the recommended guideline sentence trivializes the value of human life, is nothing more than a statement of the court's opinion that the legislatively mandated guideline sentence for this particular crime should be greater. The reason is ambiguous and fails to relate to any identified fact in the context of the case. Burch v. State, 462 So.2d 548 (Fla. 1st DCA 1985); Alford v. State, 460 So.2d 1000 (Fla. 1st DCA 1984).
Likewise, reason number four reflects the court's opinion that appellant's failure to seek immediate medical treatment resulted in the child's death. This reason is also ambiguous and unclear and, further, is unsupported by the record. The evidence at the hearing reflects that the appellant, on checking the child at 6:00 A.M. and finding her to be cold and stiff, immediately carried the child to the hospital. Moreover, the testimony of the medical examiner does not establish that the child died as a result of appellant's failure to seek prompt medical attention, but only that there was an "outside possibility" that she might have survived if treated immediately after the trauma was sustained.
Reason number two may be found valid on the basis of Williams v. State, 462 So.2d 36 (Fla. 1st DCA 1984) and Ross v. State, 478 So.2d 480 (Fla. 1st DCA 1985). In both of those cases, this court upheld as a reason for departure the fact that an offense was committed on a child by one "in a position of familial authority to whom the child should be able to rely upon for *863 protection and sanctuary from such vile conduct." Ross v. State, 478 So.2d at 482.
Last, we find reason number three to be valid on the basis of those cases finding the amount of force used to be a proper consideration. Mincey v. State, 460 So.2d 396 (Fla. 1st DCA 1984); Saab v. State, 479 So.2d 845 (Fla. 1st DCA 1985); Harris v. State, 482 So.2d 548 (Fla. 4th DCA, 1986).
Since we are unable to conclude beyond a reasonable doubt that the absence of the invalid reasons would not have affected the sentence imposed, we reverse and remand for resentencing. Albritton v. State, 476 So.2d 158 (Fla. 1985).
REVERSED and REMANDED.
BARFIELD, J., concurs.
ZEHMER, J., concurs in part and dissents in part.
ZEHMER, Judge, concurring in part and dissenting in part.
I concur in the majority decision in all respects save one. The majority approves ground number three, which describes the brutal beating that inflicted the injuries which caused the victim's death, citing cases purporting to approve the amount of force used as a ground for departure from the recommended sentence. Two of the cases, Mincey v. State, 460 So.2d 396 (Fla. 1st DCA 1984), and Sabb v. State, 479 So.2d 845 (Fla. 1st DCA 1985), involved convictions of armed robbery, and victim injury is not necessarily a part of that charge to be included on the scoresheet. The third case, Harris v. State, 482 So.2d 548 (Fla. 4th DCA, 1986), involved a conviction of false imprisonment, burglary, and armed sexual battery; and although these crimes "involved great violence and great bodily harm," these factors were "not part of the original charge, in that the State charged and proved sexual batteries while `armed,' and did not charge `great bodily harm.'" 482 So.2d at 549.
In the instant case, great bodily harm causing death was necessarily included in the offense of manslaughter charged, and twenty-one points were accordingly included in the scoresheet for victim injury characterized as "death or severe." Since this reason was necessarily included in the total score and no separate conviction was obtained for child abuse or battery, I believe the three cited cases are distinguishable and that the third ground cannot serve as a proper reason for supporting departure in this case. I reach this conclusion because victim injury was necessarily scored as an element of the offense, rule 3.701(d)(7), Fla. R.Crim.P., and "reasons for deviating from the guidelines shall not include factors relating to the instant offenses for which convictions have not been obtained." Rule 3.701(d)(11), Fla.R.Crim.P.