531 So.2d 212 (1988)
Robert L. WILLIAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 87-1599.
District Court of Appeal of Florida, First District.
September 13, 1988.
*214 Michael E. Allen, Public Defender, and Maria Ines Suber, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant Robert L. Williams, Jr., appeals his conviction and the sentences imposed after a jury found him guilty of attempted first degree murder and armed robbery. Appellant alleges error in the trial court's denial of his motions for judgment of acquittal, and the imposition of sentences which exceeded the recommended guidelines sentencing range. We affirm.
The events which resulted in the attempted first degree murder and armed robbery convictions which are the subject of this appeal, occurred in the early morning hours of February 19, 1987. At that time, the night-shift attendant of a truckstop in Madison County, Florida, was attacked and robbed of the night's receipts. The attendant fortuitously survived the attack, but suffered a permanent memory lapse with regard to the events of that night. At trial, he testified that he remembered going to work on the night of February 18, 1987, performing his customary shift-change duties, and waving at a passing deputy. However, he remembers no other events of that night, including events prior to the attack.
The medical evidence established that the attendant had been dealt five to seven blows to the head with a blunt, but sharp instrument like a crowbar. The attendant was discovered about 5:30 a.m., lying comatose in a pool of blood. He suffered extensive fracturing of the head and face, severe concussion, loss of memory, and permanent brain damage. The neurosurgeon who treated the attendant testified that his memory loss was due to the concussion and brain damage which resulted from the beating.
Other evidence at trial revealed that appellant became a suspect in the case after his cousin, Broderick Monlyn, was arrested on burglary charges. The police chief testified that on March 19, 1987, while Monlyn was being held in jail on the burglary charges, appellant told police officers that Monlyn had committed the burglaries for which he had been arrested, and, in addition, had committed the truckstop robbery and beating. Appellant also advised the officers that the weapon used in the attack was in the trunk of Monlyn's car. The chief further testified that on the morning after the attack and robbery, appellant said Monlyn came to his [appellant's] apartment and asked appellant to find out how the man at the truckstop was doing. Appellant said when he told Monlyn the man was nearly dead, Monlyn replied, "Good." Later, the chief talked with Monlyn, telling him that appellant had named him [Monlyn] as the person responsible for the attack on the attendant. Monlyn then told officers that appellant was the guilty party.
Monlyn testified that he was staying at his grandmother's house on the night of *215 the robbery, and that appellant awakened him in the early morning hours with a request for money. When Monlyn told him he had no money, appellant proposed that they rob the truckstop. Monlyn refused, then appellant asked him to go along as a lookout. At first, Monlyn hesitated, then agreed to go. Monlyn stated appellant went into a back room of the house, and returned with socks on his hands; Monlyn then put socks on his hands as well. According to Monlyn's testimony, when the two went outside, appellant picked up a crowbar which was propped against the house, telling Monlyn he had placed it there.
A truck was parked at the pumps when the two arrived at the truckstop. As they waited for the truck to leave, Monlyn's testimony indicates that appellant said he would lure the attendant to the back of the building so that Monlyn could hit him. Monlyn refused, and was about to leave when appellant stopped him. Appellant then leaned the crowbar against the building, and walked around to the front where he engaged the attendant in conversation. Monlyn stated appellant returned to the back of the building, fumbled around a stack of tires, retrieved the crowbar, and then called to the attendant. When the attendant came out, appellant swung the crowbar. Monlyn said he told appellant he had killed the man; Monlyn then panicked and left.
After returning to his grandmother's house, Monlyn watched by the window. When appellant returned, Monlyn saw that he still had the crowbar in his hand. As Monlyn watched, appellant pitched the crowbar by the water pump, and then left. Monlyn went to sleep. However, before he went to work later in the morning, Monlyn wiped the crowbar with a rag and threw it under the house. According to Monlyn, he borrowed twenty dollars from appellant the day after the robbery. Monlyn said appellant gave him a fifty dollar bill, and Monlyn later returned thirty dollars to appellant.
During cross examination, Monlyn stated he was in jail on a burglary charge when officers first talked to him about the truckstop robbery. When asked if that was when he told officers about appellant's involvement in the robbery, Monlyn responded that he told about appellant's involvement after appellant voluntarily reported to the police that he [Monlyn] was responsible for the truckstop robbery and attack.
Appellant testified in his own defense, giving a somewhat altered version of the events in question. According to appellant, on the morning after the robbery, Monlyn told appellant that he [Monlyn] was close by when the attack and robbery occurred. Appellant then stated that Monlyn sent him to see how the attendant was doing, and that Monlyn responded, "Good," when told that the attendant was near death.[1] In addition to conflicting with Monlyn's version of events, appellant's trial testimony was inconsistent on direct and cross examination, and inconsistent with earlier statements he had given to police, as well. For example, appellant denied telling the police that Monlyn was involved in the truckstop crimes, but he admitted telling the police that Monlyn told him to check on the man who had been attacked. During direct examination, appellant denied knowing a former employee of the truckstop, denied knowledge of the place where the truckstop receipts were secreted during the night shift, and denied lending money to Monlyn on the day after the robbery. During cross examination, appellant again denied, then admitted, knowing a former employee of the truckstop. Appellant also stated that he spent the night of the robbery at his grandmother's house, but admitted that during his first interview with the police, he said he spent the night of the robbery with his girl friend.
At the conclusion of the state's case, defense counsel moved for judgment of acquittal, on the ground that the evidence was insufficient to support a finding of guilt. The motion *216 was denied. The motion was renewed, and again denied, after the defense rested its case. The jury found appellant guilty as charged on both counts.
At sentencing, the state offered four arguments, together with supporting authority, as the basis for a sentence in excess of the recommended guideline sentence. Briefly stated, the state's four arguments for departure were predicated on: (1) the excessive force used in the attack, (2) appellant's unscoreable subsequent offenses, (3) appellant's recent release from prison, and (4) appellant's inside information which led to the crime. The trial court did not articulate reasons for departure at sentencing. Instead, in pronouncing sentence, the court stated:
I do find there are adequate legal reasons for departing from the guidelines, and it is the sentence of the Court that you be committed to the Department of Corrections for a term of 30 years on each count to run concurrent, but consecutive to any other sentence now imposed.
The subsequently filed written statement of reasons for departure essentially tracks the state's rationale for a sentence in excess of the recommended guidelines sentencing range.
Appellant's first challenge is directed to the trial court's denial of his motion for judgment of acquittal with respect to the charge of attempted first degree murder. In essence, appellant argues that the factual circumstances were insufficient to establish that he had a premeditated intent to kill, and that the reasonable inferences which could be drawn from the evidence are as consistent with a finding that he did not have a specific intent to kill as with a finding that he did have such a specific intent.
A motion for judgment of acquittal must fully set forth the grounds upon which it is based. Fla.R.Crim.P. 3.380(b). Therefore, a general "boilerplate" motion is insufficient to preserve the issue for review. Johnson v. State, 478 So.2d 885 (Fla. 3d DCA 1985). In addition, the party moving for judgment of acquittal admits the facts and evidence adduced, as well as every conclusion favorable to the adverse party that the jury might fairly and reasonably infer from the evidence. Peacock v. State, 498 So.2d 545, 546 (Fla. 1st DCA 1986); Ambrister v. State, 462 So.2d 43, 45 (Fla. 1st DCA 1984), pet. for review denied, 467 So.2d 1000 (Fla. 1985). The test is whether the state produced competent evidence to support every element of the crime. Peacock, 498 So.2d at 546.
Application of these principles to this case demonstrates that the elements of attempted first degree murder include: (1) a premeditated design and specific intent to commit the underlying crime of murder, and (2) an overt act designed to effectuate that intent, carried beyond mere preparation, but falling short of executing the ultimate design. Amlotte v. State, 456 So.2d 448, 449 (Fla. 1984); Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Moreover, where, as in the instant case, a conviction is based on circumstantial evidence, the "standard to be applied... is that the evidence must be `inconsistent with any reasonable hypothesis of innocence.'" Toole v. State, 472 So.2d 1174, 1176 (Fla. 1985), quoting McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). The question, however, is for the jury to determine, and "where there is substantial, competent evidence to support the jury verdict, that determination will not be disturbed by the courts." Id.; Heiney v. State, 447 So.2d 210, 212 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Buenoano v. State, 478 So.2d 387, 390 (Fla. 1st DCA 1985), review dismissed, 504 So.2d 762 (Fla. 1987).
In Heiney, on the basis of a fact scenario similar to that in the instant case, the supreme court found sufficient evidence of premeditation to support a conviction for premeditated murder. The court found that at least seven blows had been inflicted on the victim's head with a claw hammer, any three of which would have been sufficient to render the victim unconscious, making it possible to effect a robbery, if robbery had in fact been the only objective. Thus, the fact that the defendant continued to beat the victim until his skull was severely *217 fractured and his brain pulped, constituted circumstantial evidence from which premeditation might be inferred. Id., 447 So.2d at 215.
As in Heiney, the record in this case contains sufficient circumstantial evidence to support the jury's finding of attempted premeditated murder. The medical evidence established that wounds inflicted upon the victim were made with an instrument like the crowbar recovered from under the house where appellant lived with his grandmother. The medical evidence also established that the victim was struck five to seven times, and any one of the blows could have been fatal. Moreover, Monlyn's testimony that the victim was rendered unconscious by the first blow is consistent with the medical testimony. Although Monlyn testified that appellant's expressed intent was to effect a robbery, Monlyn also testified that appellant carried a crowbar with him when he walked to the truckstop.
This case presents the classic situation in which two suspects each attempt to inculpate the other as the perpetrator of the operative offense, when the circumstantial evidence suggests that either could be the guilty party. Monlyn's version of the event was consistent throughout the investigation and the trial, while that of appellant was inconsistent in several respects. Of necessity, the jury's determination depended upon the credibility of the respective suspects. In the circumstances, we conclude the jury was entitled to find Monlyn the more credible of the two, and that the trial court did not err in denying appellant's motion for judgment of acquittal.
The second issue raised on appeal concerns the sentence imposed in excess of the guidelines range. A departure sentence must be accompanied by a written statement delineating the reasons for departure. Fla.R.Crim.P. 3.701(d)(11). Although the rule does not require that the written reasons be provided contemporaneously with the sentence, the committee note to the rule directs that "[r]easons for departure shall be articulated at the time sentence is imposed." The Second District has ruled that in the absence of contemporaneous written reasons, due process requires that the trial court inform a defendant of the reasons for departure at sentencing. Green v. State, 527 So.2d 277 (Fla. 2d DCA 1988); Washington v. State, 501 So.2d 133 (Fla. 2d DCA 1988). In Green, no reasons for departure were stated at sentencing, and the written order containing the reasons was not entered until one month after entry of the written judgment and sentences. Finding this procedure clearly violative of the rule, the court reversed and remanded for sentencing according to the recommended guideline sentence.
The sentencing in this case is very similar to the Green situation. Here, as in Green, the trial court did not articulate reasons for departure at sentencing and the written statement of reasons for departure was filed nearly a month after entry of the written judgment and sentence. However, there is an additional factor present in this case that is absent in Green. The record in this case reflects that the reasons which the trial court relied upon for departure were articulated with specificity at sentencing, albeit by the assistant state attorney rather than the trial court. Immediately upon the conclusion of the state's argument, the trial court stated that it found adequate legal reasons for departing from the guidelines. The departure sentence was not in compliance with the sentencing guidelines provisions. Nevertheless, appellant was clearly apprised of the state's position regarding reasons for departure, and had an opportunity to object to the rationale advanced by the state. Therefore, we find the procedure followed in this instance, though not the norm, was not violative of due process.
The trial court's subsequently filed written departure reasons state: (1) the defendant was released from incarceration July 1986 and committed an offense in February 1987; (2) the defendant used excessive force in committing the crime, by repeatedly hitting the victim multiple blows to the head, crushing his skull and inflicting permanent brain damage and resulting disabilities; *218 and (3) the victim was especially vulnerable, in that he was the only person on duty at the business establishment during the early morning hours of the crime.
A defendant's recent release from prison is a valid reason for departure. See Larry v. State, 527 So.2d 883 (Fla. 1st DCA 1988); Stubbs v. State, 522 So.2d 444 (Fla. 1st DCA 1988). In this case, appellant had been released from incarceration less than seven months before commission of the instant offenses. In these circumstances, the recent release from prison rationale constituted a legitimate reason for departure.
Excessive use of force may also be a valid reason for departure. See Hansbrough v. State, 509 So.2d 1081, 1087-1088 (Fla. 1987); Johnson v. State, 508 So.2d 443, 444 (Fla. 1st DCA 1987); Jefferson v. State, 489 So.2d 860 (Fla. 1st DCA 1986); Sabb v. State, 479 So.2d 845 (Fla. 1st DCA 1985); Allen v. State, 522 So.2d 850, 851 (Fla. 4th DCA), review denied, 518 So.2d 1273 (Fla. 1987); Murray v. State, 512 So.2d 1136 (Fla. 2d DCA 1987). However, as a general rule, excessive use of force will not support departure when the force used resulted in victim injury and the extent of victim injury has been calculated in the guidelines. Mathis v. State, 515 So.2d 214, 216 (Fla. 1987); VanTassell v. State, 512 So.2d 181, 183 (Fla. 1987); Vanover v. State, 498 So.2d 899, 901 (Fla. 1986).
On the other hand, although departure is precluded when predicated on a factor which has been scored, when the facts of the case permit, the trial court may base departure upon the egregious nature of the defendant's conduct in the perpetration of the offense. State v. McCall, 524 So.2d 663, 665 (Fla. 1988); Hall v. State, 517 So.2d 692 (Fla. 1988); McFadden v. State, 529 So.2d 351 (Fla. 1st DCA 1988); Washington v. State, supra.
The record in this case reflects that appellant's conduct toward the victim was of that extraordinarily egregious nature which the supreme court contemplated as an appropriate reason for departure in McCall and Hall. Although the victim in this case was rendered unconscious by the first blow, appellant continued to strike with such force that the victim suffered multiple scalp lacerations, extensive fracturing of his head and face, and a massive blood clot inside his head which pressed upon his brain. Medical testimony at trial indicated that the victim would have died, but for the fortuitous circumstance that he was found shortly after the attack, thereby enabling him to receive medical help within a short period of time. Trial testimony also revealed that the victim was found lying in a pool of his own blood, with blood spatters on the walls reaching as high as five feet. Appellant was assessed twenty-one points for victim injury, pursuant to the "death or severe" victim injury scoresheet classification.
We conclude that here, as in Hall and McCall, the trial court's stated departure reason was predicated on the egregious conduct of the defendant, rather than upon the victim injury which had already been scored. The ferocity and the ongoing nature of the attack upon the completely helpless victim in this case constitutes an extraordinary and extreme incident of attempted murder that went well beyond the overt act which is an essential element of attempted first degree murder. See, generally, Fryson v. State, 506 So.2d 1117 (Fla. 1st DCA 1987); Arnold v. State, 505 So.2d 1104 (Fla. 2d DCA), review denied, 515 So.2d 229 (Fla. 1987). We conclude, therefore, that the second departure reason, based on the egregious nature of appellant's conduct, "is a clear and convincing reason for departure under the circumstances of the present case." State v. McCall, 524 So.2d at 665.
The third departure reason, the victim's vulnerability, can be a valid basis for departure, in appropriate circumstances. See McPherson v. State, 505 So.2d 5, 6 (Fla. 1st DCA 1986); Hadley v. State, 488 So.2d 162 (Fla. 1st DCA 1986); VonCarter v. State, 468 So.2d 276 (Fla. 1st DCA 1985); Morales v. State, 471 So.2d 625, 626 (Fla. 2d DCA 1985); Moore v. State, 468 So.2d 1081, 1082 (Fla. 3d DCA 1985). However, victim vulnerability is not a valid reason to *219 depart when the victim's helplessness is based on factors common to nearly all victims of armed robbery. Mathis v. State, 515 So.2d 214, 215 (Fla. 1987); Burney v. State, 523 So.2d 795, 795 (Fla. 1st DCA 1988). In this case, as in Burney and Mathis, the victim's vulnerability was due to the circumstances of his employment. We conclude that the victim's vulnerability in this regard was a factor common to nearly all armed robbery victims employed by business establishments that remain open all night, and therefore does not constitute a valid departure reason in this case.
Although we have found the third reason for departure invalid, we are convinced beyond a reasonable doubt that the trial court would have arrived at the same sentencing decision on the basis of the two other stated reasons for departure.[2]See Griffis v. State, 509 So.2d 1104 (Fla. 1987); Albritton v. State, 476 So.2d 158 (Fla. 1985). Moreover, while we do not approve the trial court's failure to articulate reasons for departure at sentencing, we find the omission does not require reversal for resentencing in the narrow circumstances of this case. Finally, we have determined the trial court properly denied appellant's motion for judgment of acquittal.
Accordingly, appellant's convictions and the sentences imposed thereon are affirmed.
ERVIN and NIMMONS, JJ., concur.
NOTES
[1] Monlyn's testimony on this point had been that appellant sent him [Monlyn] to inquire about the condition of the attendant. When Monlyn reported that the man was near death, appellant purportedly stated, "Good."
[2] The crimes for which appellant was convicted were committed before the effective date of the 1987 amendments to section 921.001(5), Florida Statutes, which reduced the level of proof necessary to support a departure sentence to preponderance of the evidence. Therefore, we adhere to the Albritton "beyond a reasonable doubt" standard as applicable to this case.