316 So.2d 539 (1975)
Darius SLATER, Appellant,
v.
STATE of Florida, Appellee.
Dennis SLATER, a/K/a Darius Slater, Appellant,
v.
STATE of Florida, Appellee.
Nos. 46338 and 45851.
Supreme Court of Florida.
June 25, 1975.
*540 Richard L. Jorandby, Public Defender, Leon St. John and Kenneth J. Scherer, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
OVERTON, Justice.
These consolidated direct appeals are from a conviction of murder in the first degree and sentence to death and a conviction of robbery and sentence to life imprisonment. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
At approximately 6:00 p.m. on August 23, 1973, the Lake Shore Motel in Orlando was robbed of two pistols and some $65.00 in cash. The manager of the motel was killed by gunshot during the robbery. Subsequently, the appellant, Darius Slater, was arrested and charged with this murder and robbery, as were two other individuals, Larry Gore and Charlie Ware.
Charlie Ware pleaded nolo contendere to a charge of first degree murder and was sentenced to life imprisonment. Larry Gore pleaded guilty to robbery and was sentenced to five years imprisonment. Both these individuals were called to the witness stand at the trial of the appellant. Although Ware was granted immunity from further prosecution, he refused to testify and was held in contempt. Larry Gore chose to testify, stating that he had been the "wheel man" who waited outside the motel while Charlie Ware and the appellant entered the building. Gore further testified that when the appellant and Ware returned from the robbery, the appellant stated "that Ware had made a mistake and shot him [the manager]." This testimony was corroborated by an Orlando Police Department investigator, Charlie Ings, at the proceedings in mitigation and aggravation following trial. Ings testified that Ware confessed to entering the motel with the appellant, pulling a gun on the desk clerk, and accidentally shooting the clerk when his thumb slipped off the hammer of the gun. The appellant allegedly grabbed the money box, and both he and Ware ran out to join Gore. The appellant, testifying in his own behalf at the trial, asserted that he was not present when the robbery and murder were committed.
The jury found the appellant guilty of robbery as charged in the information and of first degree murder as charged in the indictment. Subsequent to the conviction of murder in the first degree, a sentence advisory hearing was held pursuant to Section 921.141, Florida Statutes (1973), at which the jury was properly instructed to consider the aggravating and mitigating circumstances. By vote of 11 to 1, the jury returned an advisory sentence of life imprisonment. The judge ordered the Florida Parole and Probation Commission to prepare a presentence investigation upon the defendant. After considering the advisory opinion and the presentence investigation, the trial judge entered his "Findings in Support of Verdict Overruling Jury Recommendations," which are as follows:
"The Court has considered the itemized points for consideration in aggravation and in mitigation set forth in Florida Statute Section 921.141 and has also considered the jury's recommendation of life imprisonment and has for the reasons set forth in open court at the time of sentencing and now made a part of the record together with the following reasons, exercised its discretion, and notwithstanding the recommendation of a majority of the jury, has imposed a sentence of death upon the Defendant.
"The Defendant created a great risk of death not only to the victim, but the risk of death was also present to any unknown persons who might have chanced into the office at the time of the robbery *541 and this must have been known to the Defendant since the office was a public place in the motel in the early evening hours. The murder was committed while in the act of a robbery and for pecuniary gain. The murder was atrocious in that it was a scheme that was premeditated, calculated and executed in a cold-blooded fashion wherein it was clearly demonstrated that human life was given a very low value.
"The only item in mitigation to be considered is the light criminal record of the Defendant and that is not in the least bit compelling. The Defendant has been under investigation before and this Court finds it incredible that the Defendant's first crime would be the one of robbery and murder.
"It is, therefore, for the above-stated reasons and for those reasons stated in open court subsequently transcribed and now attached to these findings, that the jury's recommendation for life imprisonment is overruled and the death penalty is imposed."
The reasons set forth by the trial judge in open court, transcribed in the record, incorporated into his above order, and attached thereto, are as follows:
"... It's difficult to determine exactly what case is or is not the fitting case to impose the death penalty upon. But, in this Court's estimation, or understanding, armed robbery is one of the most serious offenses that can be committed.
"It is a premeditated offense; where one man has decided coldly, calculatingly, way in advance, to arm himself and go to a neighbor and confront him with the choice of giving him his money or forfeiting his life. That is a very barbaric and base set of values.
"I cannot think in my own mind of any crime more serious. We're not involved here in this case in a passion killing or something where an act was committed in the heat of anger without an opportunity for cool reflection.
"In considering the matters that would be in mitigation, one might think that Darius was an accessory and not the actual perpetrator of the murder. I don't feel you can treat Darius and Charles Ware separately in that fashion.
"They planned together to arm themselves and go to the Lake Shore Motor Lodge and threaten to kill a man if he did not turn over his money, they did, they together, and the man died.
"Whichever one of them pulled the trigger is almost a matter of chance. Whether or not it was an accident I don't even feel is worthy of consideration. You don't cock a gun in a man's face and have it go off and say, oh dear, that was an accident, any more than you drink excessive quantities of liquor and go out and drive and kill a man and say it was an accident. You created the situation, you put your cards on the table, you play for high stakes, and you bear the consequences.
"The only other matter that could be considered is that the defendant has no extensive prior criminal record. This of course is not to be taken lightly, but itself, it waves a red flag in my mind that his first offense should be robbery and murder.
"I'm not an advocate of the theory that you give the dog two bites.
"Another matter that you might possibly consider as being in mitigation would be the age. The defendant is 24 years old, that is not young. He has seven years into his majority. Many people have graduated from college by that age, have taken on positions of great responsibility, have served in the Armed Forces, sometimes as officers and some have died in combat long before that age.

*542 "Most crime in this country is committed by people between the ages of 17 and 25. So at age 24, Darius is an elder statesman in the field of crime. As far as matters in aggravation are concerned, there are many.
"He killed a man for $64.88. He killed a man in an act that was imminently dangerous to an unknown number of people. It was only chance that there was only one man in the room at that time.
"As to whether or not the capital felony was especially heinous, atrocious or cruel is a condition in the statute that concerns me greatly, because I think it puts an emphasis on what might unfortunately, for the lack of any better way to express it, be called a gory crime. I don't think you have to have a messy crime. I think it is a heinous and atrocious act to ever threaten a man just to take his money or his property.
"If we are going to have capital punishment, and we're not here today to debate that, then I think it ought to be imposed firmly in the appropriate instances and I can think of no other instance more appropriate than death in the course of an armed robbery."
Accordingly, the defendant, Slater, was sentenced to death for the first degree murder conviction.
Appellant's first point on appeal concerns two pistols, a .22 caliber and a .32 caliber, which were admitted into evidence at trial along with the death bullet. The testimony established that the .22 caliber pistol was the murder weapon and that the .32 caliber pistol was stolen from the motel. Their admission into evidence was proper.
We have listened carefully to oral argument, examined and considered the record in light of the assignments of error and briefs filed, and reviewed the evidence to determine whether the interests of justice require a new trial. We find no reversible error, and the evidence in the record does not reveal that the ends of justice require a new trial. Furthermore, we find no merit in appellant's contention that he was illegally sentenced for his conviction of robbery. As appears from the record before us, he was charged and convicted of murder in the first degree and was charged and convicted of robbery. These are two separate offenses, for which separate sentences were properly imposed.
We must, however, overrule the trial court's imposition of the death sentence on the murder charge. In this robbery-murder incident, the court that tried the appellant also permitted the "triggerman," Ware, to enter a plea of nolo contendere to the charge of first degree murder, for which he was sentenced to life imprisonment. The record clearly reflects that the defendant-appellant, Slater, was an accomplice and did not have the murder weapon in his hand. Eleven members of the trial jury recognized the circumstances surrounding this offense and recommended life imprisonment.
We pride ourselves in a system of justice that requires equality before the law. Defendants should not be treated differently upon the same or similar facts. When the facts are the same, the law should be the same. The imposition of the death sentence in this case is clearly not equal justice under the law. Ironically, the trial judge stated in his reasons, "I don't feel you can treat Darius [the appellant, Darius Slater] and Charles Ware [the `triggerman'] separately in that fashion," and then went ahead and did so. We recognize the validity of the Florida death penalty statute as expressed in State v. Dixon, 283 So.2d 1 (Fla. 1973), but it is our opinion that the imposition of the death penalty under the facts of this case would be an unconstitutional application under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). By so holding, *543 we do not in any way recede from our decision in State v. Dixon, supra, or subsequent opinions upholding the imposition of the death sentence. Sullivan v. State, 303 So.2d 632 (Fla. 1974); Hallman v. State, 305 So.2d 180 (Fla. 1974); Alford v. State, 307 So.2d 433 (Fla. 1975); Sawyer v. State, 313 So.2d 680 (Fla. 1975).
The sentence imposed on the defendant for the first degree murder offense is hereby reduced to life imprisonment. In all other respects, the trial court is affirmed.
It is so ordered.
ADKINS, C.J., and LEE and McCRARY, Circuit Judges, concur.
CREWS, Circuit Judge, concurs with an opinion.
ROBERTS, J., concurs in part and dissents in part with an opinion, with which McCAIN, J., concurs.
CREWS, Circuit Judge (concurring).
I concur with the opinion of Mr. Justice Overton, but would add that the imposition of the death penalty under the facts in this case, if sustained, would have an impermissible "chilling effect" on a codefendant's right of jury trial pursuant to the Sixth Amendment to the Constitution of the United States and Section 22 of Article I of the 1968 Constitution of Florida.[1]
Further, sustaining the imposition of the death penalty in this case would inevitably weaken the learned opinion of Mr. Chief Justice Adkins sustaining the constitutionality of the Florida death penalty statutes.[2]
ROBERTS, Justice (concurring in part and dissenting in part).
I concur in that part which affirms the conviction but dissent from the part reversing the trial judge's imposition of the death penalty.
McCAIN, J., concurs.
NOTES
[1] See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).
[2] State v. Dixon, 283 So.2d 1 (Fla. 1973).