DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUSAN RICHARDSON,**
Appellant,

v.

**EVERBANK, substituted for BANK OF FLORIDA-SOUTHEAST** f/k/a
**BANK OF FLORIDA; LEFTA ENTERPRISES, L.L.C.,** a Florida limited
liability company; **KENNETH E. RICHARDSON,** an individual; **K-LYNN
MCKERCHIE,** an individual; **BROEREN RUSSO BUILDERS OF
FLORIDA, L.L.C.,** a Florida limited liability company; **OTIS ELEVATOR
CO.,** a foreign corporation; **PATRIOT SURVEYING & MAPPING, INC.,** a
Florida corporation; **AMERICAN EAGLE ENGINEERING
CONTRACTORS, INC.,** a Florida corporation; **ADVANCED FIRE AND
SECURITY, INC.,** a Florida corporation; **DIXIE LANDSCAPE CO., INC.,**
a Florida corporation; **DEBRA STOLTZ;** and Any and All Unknown
Parties Claiming By Through Under and Against the Herein Named
Individual Defendant(s) Who are Not Known to be Dead or Alive, Whether
Said Unknown Parties May Claim an Interest as Spouses, Heirs,
Devisees, Grantees or Other Claimants,
Appellees.

No. 4D12-3611

[January 7, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Jeffrey E. Streitfeld, Judge; L.T. Case No. 09-50156
CACE (07).

Stephen M. Cohen, Palm Beach Gardens, for appellant.

Bryan S. Gowdy and Jessie L. Harrell of Creed & Gowdy, P.A.,
Jacksonville, for appellee EverBank, substituted for Bank of Florida-
Southeast f/k/a Bank of Florida.

CIKLIN, J.

Susan Richardson appeals a final judgment in favor of plaintiff below,
Everbank, in an action arising from a series of commercial loans issued by
its predecessor, Bank of Florida (hereinafter "the bank"). Among other

points raised on appeal, Mrs.[1] Richardson alleges that the bank discriminated against her on the basis of her marital status by requiring her to sign guarantees for the loans, thereby rendering the guarantees unenforceable. Because the trial court's finding of no discrimination is supported by competent, substantial evidence, we affirm.

The subject loans were issued to Lefta Enterprises, LLC ("Lefta"), a company owned by Mrs. Richardson's husband, Kenneth Richardson, and another individual, Terry McKerchie. In applying for the loans, Mr. Richardson submitted his and Mrs. Richardson's joint financial statement. Mr. and Mrs. Richardson and Mr. and Mrs. McKerchie each executed guarantees for the loans. The company, Lefta, defaulted on the loan and the bank brought suit for both (1) foreclosure and (2) recovery under promissory notes and guarantees, plus other claims not at issue on appeal.

As affirmative defenses, Mrs. Richardson and Mrs. McKerchie asserted that their guarantees were illegal and unenforceable because they were required to execute them in violation of the Equal Credit Opportunity Act of 1974 ("ECOA"), which, among other provisions, prohibits a lender from discriminating against an applicant on the basis of marital status, including the requirement for the signature of the applicant's spouse on a credit instrument. Mrs. Richardson claimed she was not associated with Lefta, and was only required to sign the personal guarantees by virtue of her marriage to Mr. Richardson.

Following the non-jury trial, the trial court found that Mrs. McKerchie was asked to execute a guaranty "strictly because she was married to [Mr. McKerchie,]" therefore the guaranty was void and unenforceable against her. With regard to Mrs. Richardson, however, the trial court found no discrimination and entered final judgment in favor of the bank. The final judgment provides in pertinent part:

> [T]he Court does not find that [Mrs. Richardson] was asked to sign the guarantees in question merely because she was married to Defendant [Mr. Richardson]. The Court finds, based upon the personal financial statements submitted, the various accounts in which she was involved as a joint owner and/or member, that the bank could easily have concluded that she was an investor along with [Mr. Richardson] to some degree. And given the fact that there was no distinction made on the personal financial statement between joint assets and individually owned assets, and it was

---

[1] For ease of understanding, we use the terms "Mr." and "Mrs."

2

submitted as personal financial statement of both, the Court finds no evidence of discrimination.

Mrs. Richardson argues on appeal that the evidence does not support the trial court's finding of no discrimination under the ECOA, and further that the bank failed to meet the requisite burden of proof of establishing a non-discriminatory basis for its actions. Additionally, Mrs. Richardson vigorously asserts that the trial court erred because there was *even more* evidence to support a finding of discrimination by the bank against her than to support a finding of discrimination against Mrs. McKerchie.

The bank contends that the Richardsons' joint financial statement provided competent, substantial evidence of a lack of discrimination and that Mrs. Richardson failed to meet a burden assigned to her which requires proof that Mr. Richardson was individually creditworthy.

The ECOA was enacted, in part, to address discrimination against married women in obtaining credit; it prohibits a lender from discriminating "against any applicant, with respect to any aspect of a credit transaction [] on the basis of . . . sex or marital status . . . ." 15 U.S.C. § 1691(a)(1) (2012). Regulation B, which was promulgated to implement the prohibition, 12 C.F.R. § 202.1 (2012), specifically bans a lender from requiring an applicant's spouse to guarantee a loan if the applicant otherwise qualifies for the loan:

> (1) Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

12 C.F.R. § 202.7(d)(1) (2012). A violation of the ECOA may render a guaranty unenforceable. *See Chen v. Whitney Nat'l Bank*, 65 So. 3d 1170, 1173-74 (Fla. 1st DCA 2011).

However, the signature of a spouse or other party may properly be required in a number of circumstances, including to make the property relied upon for credit accessible to the creditor in the event of default or where the liability of an additional party is necessary to support the credit requested:

(2) Unsecured credit. If an applicant requests unsecured credit and relies in part upon property that the applicant owns jointly with another person to satisfy the creditor's standards of creditworthiness, the creditor may require the signature of the other person only on the instrument(s) necessary, or reasonably believed by the creditor to be necessary, under the law of the state in which the property is located, to enable the creditor to reach the property being relied upon in the event of the death or default of the applicant.

. . . .

(4) Secured credit. If an applicant requests secured credit, a creditor may require the signature of the applicant's spouse or other person on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the property being offered as security available to satisfy the debt in the event of default, for example, an instrument to create a valid lien, pass clear title, waive inchoate rights, or assign earnings.

(5) Additional parties. If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the credit requested, a creditor may request a cosigner, guarantor, endorser, or similar party. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

12 C.F.R. § 202.7(d).

In seeking credit from the bank, Mr. Richardson submitted a financial statement that included substantial assets titled in both his and his wife's names. The assets listed on the statement include a personal residence worth approximately one-third of the total assets listed, as well as cash, a savings account, 401(K), vehicles, and personal property, among other items. It additionally lists several companies which appear to show partial ownership by Mrs. Richardson, including Lefta, which is described as, "THIS ENTITY IS TERRY MCKERCHIE AND SUSAN AND I. WE OWN THE BUILDING THAT OUR OFFICES ARE IN."

Although Mr. Richardson was not seeking joint credit, the statement he submitted in support of his credit application did not distinguish those assets owned jointly or singularly and in fact included one company exclusively owned by Mrs. Richardson. It was therefore entirely reasonable for the bank to assume that at least a portion of the assets and

4

corporations offered by Mr. Richardson to satisfy the bank's credit standards were jointly owned with Mrs. Richardson. Thus, it was not unreasonable for the bank to require her to execute guarantees to secure the credit. *See Gonzalez v. NAFH Nat'l Bank*, 93 So. 3d 1054, 1057-58 (Fla. 3d DCA 2012) (finding no violation of ECOA and explaining that it was "not just reasonable but prudent for the creditor bank to have [wife] execute the mortgage" where real property securing loan was jointly owned by husband and wife).

Few Florida cases address the issue of a possible ECOA violation by requiring a wife to execute a guaranty, but numerous courts around the country have found that requiring a spouse to co-sign a guaranty does not violate the ECOA where the property of an applicant or guarantor is jointly owned by his or her spouse. *See, e.g.*, *F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1481 (D. Kan. 1995) (even though wife was not an officer or shareholder, bank did not discriminate on basis of marital status where no evidence supported that corporation would have qualified for loan without the consideration of property jointly held by husband and wife); *Riggs Nat'l Bank of Washington, D.C. v. Linch*, 829 F. Supp. 163, 169 (E.D. Va. 1993) (bank did not discriminate by requiring wife's signature after determining that husband was not individually creditworthy), *aff'd*, 36 F.3d 370 (4th Cir. 1994); *Resolution Trust Corp. v. Townsend Assocs.*, 840 F. Supp. 1127, 1142 (E.D. Mich. 1993) (where husband-applicant submitted joint financial statement of himself and his wife, creditor did not discriminate by requiring both husband and wife to execute guaranty).

Somewhat similarly to the facts at hand, in *Moran Foods, Inc. v. Mid-Atlantic Market Development Co.*, 476 F.3d 436 (7th Cir. 2007), a guarantor-husband listed several residences on his list of assets, so the creditor required a guaranty from his wife as well. Although its analysis turns on a different issue,[2] the Seventh Circuit stated that the wife failed to prove discrimination and that the creditor "naturally and correctly assumed that [the wife] had an interest in those [residences]." *Id.* at 442. The court explained:

> It was therefore sound commercial practice unrelated to any stereotypical view of a wife's role for [the creditor] to require that she guarantee the debt along with her husband. As far as appears, had

---

[2] *Moran* finds that the wife was not an applicant and suggests a guarantor is not included in the definition of "applicant." *Id.* at 441-42. However, the ECOA definition of applicant explicitly includes guarantors for purposes of section 202.7(d). 12 C.F.R. § 202.2(e); *Chen*, 65 So. 3d at 1172. The parties here do not raise Mrs. Richardson's status under the ECOA as an issue.

they been unmarried but living together whether as boyfriend and girlfriend or as siblings, or father and daughter, or just roommates, as soon as [the creditor] learned that [the husband] was living with someone it would have realized that one or more of the residences on [the husband]'s list of assets might be owned with someone else or maybe owned entirely by someone else. And so it would have insisted on the guaranty. If so, there was no discrimination on the basis of marital status.

*Id.* (citations omitted).

The financial statement included in the record before us directly suggests that Mr. and Mrs. Richardson both owned Lefta, and Mr. Richardson, in conjunction with his credit application, relied at least in part on companies and real estate owned jointly with Mrs. Richardson. And, because the assets listed in the statement were not identified as jointly or individually-owned, the bank may have reasonably and understandably concluded that most if not all of the assets were jointly held.

Accordingly, competent, substantial evidence was presented to support a finding that the bank did not discriminate against Mrs. Richardson by requiring her to execute guarantees. Her guarantee may have been fiscally responsible and prudent so the bank could reach the property in the event of a default.

Next, we address the important issue of burden of proof. Mrs. Richardson contends that the bank had the burden of proving a non-discriminatory basis for its actions. *See, e.g.*, *Resolution Trust Corp.*, 840 F. Supp. at 1142. However, Mrs. Richardson first bore the burden of establishing a prima facie case of credit discrimination. *In re Farris*, 194 B.R. 931, 937 (Bankr. E.D. Pa. 1996). Even if she met this burden, the bank's reliance on the joint financial statement establishes a legitimate basis for requiring Mrs. Richardson to execute a guaranty. Mrs. Richardson did not overcome this evidence with a showing that Mr. Richardson was individually creditworthy. Moreover, for an ECOA claim, "the ultimate burden of persuasion remains with the [claimant]." *Id.* at 937 (citation omitted). Mrs. Richardson failed to meet her burden.

Finally, Mrs. Richardson argues that the trial court erred because there was more evidence to support an ECOA violation against Mrs. Richardson than there was to support a finding of a violation against Mrs. McKerchie. Mrs. Richardson cites to a criminal case, *Slater v. State*, 316 So. 2d 539 (Fla. 1975), for the proposition that "[d]efendants should not be treated

differently upon the same or similar facts." *Id.* at 542. In *Slater*, the Florida Supreme Court reversed a death sentence imposed for the commission of a first-degree murder during a robbery, finding that a sentence to death was not equal justice where the defendant's accomplice (the "triggerman") was sentenced to life imprisonment. *Id.* at 542-43. However, we find no "equal justice" issue here, where the trial court's findings involve Mrs. Richardson and Mrs. McKerchie's varying finances, assets, and liabilities, as well as those of their spouses, and where the trial court specifically found that there were "no joint asset issues" with regard to Mrs. McKerchie.

Moreover, Mrs. Richardson's argument would require this court to re-weigh the evidence that was presented to the trial court. Because "the appellate court does not re-weigh the evidence or . . . . assess whether it is possible to recite contradictory record evidence which supports arguments rejected below, nor does it retry the case or substitute its judgment for the trial court's on factual matters supported by competent, substantial evidence," we must decline to do so. *Lahodik v. Lahodik*, 969 So. 2d 533, 535 (Fla. 1st DCA 2007) (citations omitted).

*Affirmed.*

DAMOORGIAN, C.J., and FORST, J., concur.

*    *    *

**_Not final until disposition of timely filed motion for rehearing._**