DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GRIFFIN INDUSTRIES, LLC,** a foreign limited liability company,
Appellant,

v.

**DIXIE SOUTHLAND CORPORATION,** a Florida corporation,
Appellee.

No. 4D13-2328

[April 15, 2015]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 09-042396 (21).

Scott B. Cosgrove of Leon Cosgrove, LLC, Coral Gables, and Steven J. Rosenwasser and John H. Rains IV of Bondurant, Mixson & Elmore LLP, Atlanta, Georgia, for appellant.

John H. Pelzer of Greenspoon Marder, P.A., Fort Lauderdale, for appellee.

LINDSEY, NORMA SHEPARD, Associate Judge.

This case involves a landlord/tenant dispute over a lease of a commercial property in Broward County. The Tenant, Griffin Industries, LLC ("Griffin"), appeals a final judgment rendered following a non-jury trial in favor of the Landlord, Dixie Southland Corporation ("Dixie"). Griffin alternatively appeals and Dixie cross-appeals the amount of damages awarded. For the reasons set forth below, we affirm the judgment in favor of Dixie and reverse and remand for a calculation of damages consistent herewith.

I.

The incidents that precipitated the filing of this action occurred over a thirty-four day period. Although there was disputed testimony at trial regarding permits and storm water management, and whether Griffin's acquisition of another property was related to these issues, the following facts were uncontested.

In September 2007, Griffin approached Patricia Montalbano, Dixie's longtime real estate broker, and inquired about a piece of property owned by Dixie east of Florida's turnpike and south of Route 595 in the town of Davie that was zoned for Griffin's proposed use (the "Property").[1] Griffin's representatives viewed and inspected the Property with Ms. Montalbano on more than one occasion. Thereafter, they entered into a written lease agreement for a warehouse located on the Property for a five-year term, commencing November 1, with monthly rent in the amount of $10,000.00 for the first year and increasing for the second and subsequent years to $10,400.00, $10,816.00, $11,248.64, and $11,698.59, respectively, plus sales taxes, real estate taxes and insurance (the "Lease"). The parties mutually performed under the Lease for approximately a year and a half.

On April 7, 2009, Griffin entered into an agreement to purchase another property, located in Pompano Beach, Florida. Meanwhile, three weeks later, the Town of Davie posted a "Courtesy Correction Notice" (the "Courtesy Notice") at the Property which contained a handwritten directive to "discontinue pumping water into the street, remove exterior pipe & cap-off" within six days. The Courtesy Notice further stated that:

> FAILURE TO COMPLY WILL RESULT IN A CASE BEING ESTABLISHED AND A HEARING SCHEDULED BEFORE A SPECIAL MAGISTRATE WHERE FINES OF UP TO $1,000.00 PER DAY MAY BE IMPOSED ALONG WITH CODE COMPLIANCE COST RECOVERY FEES PER ORDINANCE.

Griffin e-mailed the Courtesy Notice to Dixie the next day along with a letter demanding that the issue be corrected and expressing concern about the Property flooding over the upcoming weekend if the storm water was not discharged. In response, Dixie removed and capped off the offending pipe in compliance with the directive in the Courtesy Notice. Although Dixie had initially installed a flexible hose to discharge the storm water into the street, it was never used. Instead, Dixie implemented a plan to pump excess water through PVC pipes onto different portions of the Property, and, five days after issuing the Courtesy Notice, the Town of Davie re-inspected the Property and closed its file.

---

[1] Griffin is in the business of recycling food fats and greases. The facility at the Property was to be used as a collection point for materials brought in by small trucks. These materials, which are not hazardous, would be transferred onto larger trucks for transport to Griffin's Tampa facilities.

A week and a half after the Town closed its file on the Courtesy Notice, Griffin requested Dixie, via e-mail, to provide a written response as to what was being done to address the issues in the Courtesy Notice. Dixie responded the next day advising that it had engaged an engineering firm to evaluate the drainage situation and storm water management on the Property. Griffin then immediately sent another e-mail inquiring as to what was being done in the interim and whether it was permitted by the City or the State. Dixie responded that water was being retained in a portion of the Property not used by Griffin and from there was being pumped through piping into an on-site basin. On May 20, 2009, Dixie entered into a written agreement with Pillar Consultants, Inc. to design an onsite drainage system.

Nonetheless, on May 26, 2009, Griffin's Director of Legal Affairs sent a letter to Dixie stating that he had visited the Property on May 21 and that it was "obvious that illegal discharges are still occurring" and that, as a result, Griffin was terminating the Lease (the "Termination Letter"). Griffin vacated the Property in June 2009 and did not pay rent for July 2009 or any month thereafter. Dixie leased the Property to another tenant in October 2009 for a three-year term to commence on December 1, 2009 for $6,000.00 per month.

Dixie sued, and Griffin counterclaimed, for breach of the Lease. Griffin also raised several affirmative defenses. The parties stipulated at trial that they entered into the Lease and that Griffin paid no rent after June 2009. After a bench trial spanning two days, the trial court entered judgment in favor of Dixie and awarded damages for rent and sales tax through June 2010, specifically finding that Griffin's affirmative defenses were "not supported by sufficient credible evidence."

On appeal, Griffin seeks reversal of the judgment in favor of Dixie and entry of a judgment in Griffin's favor on the basis that it was legally entitled to terminate the Lease because Dixie refused to correct an illegal condition on the Property. Specifically, Griffin contends that it had the legal right to terminate the Lease because Dixie created and refused to correct unpermitted storm water and drainage systems, that Dixie breached the Lease by failing to "keep and maintain in good condition" the storm water and drainage systems, that Dixie constructively evicted Griffin by failing to correct illegal storm water and drainage systems, and fraudulently induced Griffin to enter into the Lease by falsely representing that "the property had all the permits." Griffin alternatively contends that the amount of damages awarded should be reduced to reflect rent through November 2009 pursuant to a clause in the addendum to the Lease. In

3

its cross-appeal, Dixie seeks the rent plus sales and property taxes and insurance not paid by the new tenant for the remaining term of the Lease.

II.

Griffin relies on *Marquez-Gonzalez v. Perera*, 673 So. 2d 502 (Fla. 3d DCA 1996), to justify its termination of the Lease based on Dixie's refusal to correct an illegal condition on the Property. In *Marquez-Gonzalez*, the tenant leased dilapidated commercial space on an "as is" basis with an agreement to undertake necessary refurbishing. The tenant subsequently learned that a portion of the property contained an illegal structure which had been built without the required permits. The landlord refused to correct the illegal condition and the tenant sued to rescind the lease. After a bench trial, the trial court entered judgment for the landlord on the theory that the tenant had leased the premises "as is." The district court reversed, holding that the landlord, and not the tenant, was obligated to correct the illegal condition on the property because the tenant's inspection would not have revealed the existence of an illegal condition. *Id.* at 503. Thus, in *Marquez-Gonzalez*, it was undisputed that an illegal condition existed on the premises. The only issue was whether the landlord or the tenant was responsible for its correction.

Here, in contrast, the issue of whether an illegal condition existed on the Property was contested. At Griffin's request, the trial court took judicial notice of all applicable building codes but made no finding that there were any illegal conditions on the Property and specifically found that Griffin's affirmative defenses were "not supported by sufficient credible evidence."[2]

It is not the role of appellate courts to re-weigh evidence presented to trial courts, to assess whether there is contradictory evidence in the record which supports a different conclusion than that reached by the trial court, to retry the case, or to substitute its judgment for the trial court's on factual matters. *See Richardson v. Everbank*, 152 So. 3d 1282 (Fla. 4th DCA 2015) (citing *Lahodik v. Lahodik*, 969 So. 2d 533, 535 (Fla. 1st DCA 2007)). Rather, an appellate court's review of a trial court's finding on factual matters is limited to whether they are supported by competent,

---

[2] "An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist." *Custer Med. Ctr. v. United Auto Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010) (citations omitted). "[T]he burden of proving each element of an affirmative defense rests on the party that asserts the defense." *Id.* (citing *Dorse v. Armstrong World Indus.*, 513 So. 2d 1265, 1269 n.5 (Fla. 1987)).

4

substantial evidence. *Id.*; *see also Fla. Mining & Materials v. Mobley*, 649 So. 2d 934, 934 (Fla. 1st DCA 1995) ("[C]ase[s] may not be retried on appeal, and a ruling which is supported by competent, substantial evidence will be upheld even though there may be some persuasive evidence to the contrary."). "This is because the trial judge is in the best position to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses." *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla 4th DCA 2008) (internal quotation marks omitted) (citing *Shaw v. Shaw*, 334 So. 2d 13, 16 (Fla. 1976)).

A tenant is not entitled to terminate a lease based on a theory of constructive eviction unless the premises are unsafe, unfit, or unsuitable for occupancy for the purposes for which they were leased. *Cf. Barton v. Mitchell Co.*, 507 So. 2d 148, 149 (Fla. 4th DCA 1987) (landlord's failure to add insulation to correct loud music, screaming, and vibration that interfered with tenant's business, despite repeated requests over ten-month period, constituted constructive eviction (citing *Hankins v. Smith*, 138 So. 494 (Fla. 1931))). Other than the events that transpired during the thirty-four days between the issuance of the Courtesy Notice and Griffin's Termination Letter, the record is devoid of evidence of complaints on the part of Griffin with the storm water drainage system on the Property. There is no evidence of any interference with Griffin's operations or of any safety, fitness, or suitability issues prior to the issuance of the Courtesy Notice.

To the extent there may have been an illegal condition on the Property when Griffin sent the Termination Letter, the Town of Davie already had inspected the Property and closed its file; no fines had been imposed; there was no pending Courtesy Notice or other form of governmental citation wherein the possibility of fines being imposed existed; and Dixie had engaged and entered into a written contract with an engineering firm to design an onsite drainage system for the Property. None of these facts were in dispute. Thus, any issues Griffin may have had relating to the storm water drainage system either had been, or were, in the process of being addressed by Dixie prior to the Termination Letter.

Finally, Griffin contends that Dixie fraudulently induced it to enter into the Lease by assuring Griffin that it had all necessary permits prior to the execution of the Lease. Specifically, Griffin's Southeast Division Manager testified that, prior to the execution of the Lease, Dixie's broker, Pat Montalbano, told her that the Property "had all the permits." However, Ms. Montalbano testified that no one inquired regarding the storm water system or permits. The trial court heard and considered this testimony

and evidently chose, as was within its providence, to believe Dixie's version of the events on this issue.

III.

Both Griffin and Dixie appeal the trial court's award of damages. Griffin asserts that if it is liable for any rent, the amount should be limited to rent accruing from July 2009 through November 2009 based on an early termination provision in the addendum to the Lease (the "Early Termination Clause"). Alternatively, Griffin contends that any amounts for which it is liable beyond November 2009 should reflect a deduction for the amounts paid by the new tenant. Dixie contends that it is entitled to rent plus sales and property taxes and insurance not paid by the new tenant for the remaining term of the Lease.

The Early Termination Clause provides as follows:

> 4. During month twenty-four (24) of the Lease term, Tenant has the option to terminate this Lease by giving Landlord six (6) months notice of its intention to vacate the Demised Premises. Thereafter, Tenant will pay rent during the six month period unless Landlord secures a new tenant prior to the six (6) month expiration. Tenant will waive this option should it fail to give the required notice during month twenty-four (24).

At trial, the parties stipulated that Griffin paid no rent after July 2009. It was uncontested that the only notice Griffin gave of its intent to vacate the Property was the May 2009 Termination Letter. The plain language of the Early Termination Clause requires the Tenant to give notice of its intent to vacate during ***month twenty-four*** or waive its option to exercise same. The parties further stipulated at trial that they entered into the Lease on or about October 31, 2007; thus, month twenty-four of the Lease would have commenced on or about October 31, 2009. Since Griffin gave notice of its intent to vacate in May 2009, based on the plain language of the Lease, it waived its right to exercise the Early Termination Clause.

Because Griffin's notice of its intent to vacate was insufficient to trigger the Early Termination Clause, the Court looks to the general default clause (the "the Default Clause)" in the Lease. Here, the Default Clause provides:

DEFAULT:

6

> (b) If Tenant abandons or vacate(s) (sic) before the end of the term of this Lease or shall suffer the Rents to be in arrears, Landlord may, at its option, forthwith cancel this lease terminating any rights Tenant has in the Demised Premises without prejudice to Landlord's right to recover damages from Tenant for breach of this Lease.

In addition, "numerous Florida cases have reiterated the general rule that when there has been a breach, abandonment, or renunciation of a lease before the expiration of the term, the lessor has three options." *Holiday Furniture Factory Outlet Corp. v. State, Dep't of Corr.*, 852 So. 2d 926, 928 (Fla. 1st DCA 2003). "The lessor may (1) treat the lease as terminated and retake possession for the lessor's purposes; (2) hold possession for the lessee's account, in which case the lessee is responsible for any difference between the rent obligation and amounts the lessor recovers by reletting the premises; or (3) stand by and do nothing and sue the lessee as each installment of rent matures, or sue for all the rents due when the lease expires." *Id.* (citing *Wagner v. Rice*, 97 So. 2d 267 (Fla. 1957); *Stenor, Inc. v. Lester*, 58 So. 2d 673 (Fla. 1951); *Williams v. Aeroland Oil Co.*, 155 Fla. 114, 20 So. 2d 346 (Fla. 1944); *4-Way, Inc. v. Bryan*, 581 So. 2d 208 (Fla. 1st DCA 1991); *Diehl v. Gibbs*, 173 So. 2d 719 (Fla. 1st DCA 1965); *Ft. Lauderdale Joint Venture Ltd. P'ship v. Sander*, 613 So. 2d 133 (Fla. 4th DCA 1993); *Blount v. Dino's Fontana Di Trevi, Inc.*, 583 So. 2d 380 (Fla. 3d DCA 1991); *Gould v. Vitiello*, 526 So. 2d 1018 (Fla. 2d DCA 1988); *Linens of Paris, Inc. v. Cymet*, 510 So. 2d 1021 (Fla. 3d DCA 1987); *Wolf v. Buchman*, 425 So. 2d 182 (Fla. 3d DCA 1983); *Hulley v. Cape Kennedy Leasing Corp.*, 376 So. 2d 884 (Fla. 5th DCA 1979); *Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enters., Inc.*, 235 So. 2d 344 (Fla. 2d DCA 1970)).

Here, Dixie elected to pursue the second option by re-letting the Property while holding Griffin responsible for the difference between the amounts due under the Lease and the amounts received from the new tenant. It is undisputed that Griffin paid no rent after July 2009 and that Dixie obtained a new tenant in December 2009, albeit at a lower monthly rate. Thus, Griffin is liable for the rent plus sales and property taxes and insurance not paid by the new tenant for the remaining term of the Lease.

Based on the foregoing, the trial court's final judgment in favor of Dixie is affirmed and this matter is remanded to the trial court for a recalculation of the damages awarded consistent herewith.

*Affirmed in part and reversed and remanded in part.*

7

WARNER and STEVENSON, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***