Levine, J.
This case presents several issues for. our consideration. First, whether the evidence supported an oral cohabitation agreement and, if so, whether the evidence supported the damage award. Second, whether the appellant was entitled to partition credits for expenses paid using funds belonging to both parties. Third, whether alleged inconsistencies among the trial court’s pronouncements requires reversal where the trial court confirmed, after a post-judgment hearing, that the final judgment reflected its intent.
We find that the evidence supported an oral cohabitation agreement, but that the damage award should have been for a lesser amount, as conceded by the appel-lee. We further find that the trial court did not abuse its discretion in declining to award partition credits. Finally, we find that any inconsistencies in the trial court’s pronouncements were resolved when the court re-affirmed the final judgment.
In November 2013, Anthony Armao filed a complaint against Russell Turnbull for partition of real property they owned as joint tenants with rights of survivorship. In addition to half of the sale proceeds, Armao sought credits for expenses paid on the property. Turnbull denied that Armao was entitled to any credits and counterclaimed for breach of- an oral cohabitation and support agreement.
In a joint pre-trial stipulation, the parties agreed, inter alia, that their social security checks were deposited into a joint checking account. Numerous expenses related to the home were paid from their joint checking account. They sold property together, made loans together, and filed a joint suit to recover on a loan. Checks payable in both their names were deposited into Armao’s trust account, including proceeds from the sale of joint property.
At trial, Turnbull testified that within a couple of years of meeting Armao, they entered into an oral cohabitation agreement. They discussed how they would work together, live together, provide for each other, and take care of each other. They agreed to move in together, to be a couple, and take care of each other financially and emotionally, “just like a married couple.” They agreed that all their income, investments, assets, and inheritances would be combined and used to pay their current and future expenses.
Additionally, Turnbull presented evidence, and the trial court determined, that the parties’ held themselves out as a couple during their forty-six year relationship. They had a blessing ceremony and anniversary parties. They lived together in Rhode Island and then retired together in Florida. They lived in several different homes until they purchased the home that is the subject of the partition action. They created identical trusts and wills leaving everything to each other.
Armao made the decisions in their relationship, including their financial decisions, and consequently handled all the money. *484 The parties-worked together at Armao’s family’s business. Over-the years, Turnbull earned approximately $500,000. He turned all his paychecks over to Armao.
Prior to entering into a relationship with Armao, Turnbull owned a house.' When that .property was sold, Turnbull turned the proceeds over to Armao. Before purchasing the home at issue in this case, the parties owned a condominium together. When they sold the condominium for $289,000, .the proceeds .from the sale went into Armao’s trust account. The parties purchased a yacht together and, when they sold the yacht for a net profit of $135,000, the sale proceeds went into Armao’s account. The parties also made a number of joint loans together. When Turnbull’s mother died, Turnbull gave his inheritance money—approximately $460,000—to Ar-mao.
The balances in five Wells Fargo accounts in Armao’s name totaled $1,048,448. Turnbull sought half of this amount— $509,224—as representing half of the value of the parties’ combined assets.
After trial,: the trial judge’s judicial assistant sent to the parties an email advising of the court’s ruling. The email concluded by requesting that Turnbull’s counsel prepare the judgment for the judge’s signature. The email stated that Turnbull was to receive ' a total of $750,000 for both the partition and counterclaim. Thereafter, ‘ the trial court entered a final judgment, in which the trial court granted partition of the property and ordered that the sale proceeds be divided equally between the parties without credits to either party. The trial court found that the parties’ funds were “commingled,” and that mortgage payments and living expenses were made with commingled funds. As to the counterclaim, the court found additionally that “50% of the net fair market value of all assets of Plaintiff and Defendant should be awarded to the Defendant” and awarded Turn-bull $750,000 to represent that “50%” interest in the joint assets.
Armao claimed the final judgment was contrary to the court’s intent expressed in the judicial assistant’s email to award a total of $750,000 for both the partition action and counterclaim. During a post-judgment status conference, the trial court stated' that it would review the judgment again and then rule on the motion. Afterward, the trial court confirmed that the final judgment, and not the email, reflected its intent and declined to amend the final judgment. Armao appeals.
We begin by noting that Florida law recognizes that unmarried cohabitants may agree to enter into an enforceable contract that establishes rights and responsibilities towards each other “as long as it is clear there [is] valid, lawful consideration separate and apart from any express or implied agreement regarding sexual relations.” Poe v. Levy’s Estate, 411 So.2d 253, 256 (Fla. 4th DCA 1982); see also Dietrich v. Winters, 798 So.2d 864, 866 (Fla. 4th DCA 2001). “The right to contract is one of the most sacrosanct rights guaranteed by our fundamental law.” Chiles v. United Faculty of Fla., 615 So.2d 671, 673 (Fla. 1993). See also Art. I, § 10, Fla. Const. (“No ... law impairing the obligation of contracts shall be passed.”); James W. Ely, Jr., The Contract Clause: A Constitutional History 252-53 (2016) (“[T]he Florida Supreme Court has signaled its willingness to protect contracts more fully than the federal courts.”). Additionally, nothing in the statute of frauds, section 725.01, Florida Statutes, requires that such an agreement be in writing. Indeed, among the other states that also recognize contracts between unmarried cohabitants, only three—Minnesota, New Jersey, and Texas—have held that *485 such agreements must be in -writing, and all three of those jurisdictions have enacted statutes specifically containing this requirement. See Minn. Stat. Ann. § 513.075; N.J. Stat. Ann. § 25:1-5; Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(3).[1]
Having established that Florida recognizes oral cohabitation agreements between unmarried parties, we next consider whether the evidence was sufficient to show an oral agreement. The existence of an oral contract is an issue for the finder of fact. Welborn v. Kemp, 141 Fla. 89, 192 So. 469, 470 (1939). An appellate court reviews a trial court’s factual findings for competent substantial evidence. Griffin Indus., LLC v. Dixie Southland Corp., 162 So.3d 1062, 1066 (Fla. 4th DCA 2015); see also Klosters Rederi A/S v. Jamaica Sun Tours, Ltd., 270 So.2d 466, 467 (Fla. 3d DCA 1972). “An oral contract ... is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms.” St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla. 2004).
We find that competent substantial evidence supports the trial court’s finding that the parties entered into an oral cohabitation agreement. Turnbull’s testimony was sufficiently specific as to the essential terms of an enforceable contract. Turnbull specifically testified that the parties agreed all their income, investments, assets, and inheritances would be combined and used to pay their current and future expenses.
Additionally, the parties’ course of conduct, as established through other evidence, supports the existence of a sufficiently definite agreement. The evidence showed that the parties were in a relationship for over forty years, during which time they commingled their funds. Turn-bull gave Armao his paychecks, social security payments, inheritances, and proceeds from the sales of property. Armao controlled the parties’ finances and paid the mortgage and living expenses with commingled funds. The parties made joint loans together. They created identical wills and trusts, leaving everything to each other. Thus, all of this evidence, coupled with Turnbull’s testimony, constitutes competent substantial evidence sufficient for the trial court to find an oral cohabitation agreement.
The next issue is whether the evidence supports the $750,000 award. A damages award must be supported by competent substantial evidence. Vorsteg v. Thomas, 853 So.2d 1102, 1103 (Fla. 4th DCA 2003). Armao argues, and Turnbull concedes, that the evidence did not support the $750,000 award. We agree with Turn-bull that the evidence supported an award of $509,224, representing half of the value of the parties’ combined assets. As such, we remand for the trial court to amend the final judgment to reflect an award in this amount.
We turn now to the issue of partition credits. “Because partition is a subject of equitable jurisdiction, the trial court will be affirmed unless it is shown that the trial court abused' its discretion in determining whether credits or set-offs are appropriate.” Green v. Green, 16 So.3d 298, 301 (Fla. 1st DCA 2009). We find no abuse of discretion in declining to award Armao any partition credits. Competent substantial evidence supports the trial court’s finding that Armao paid the mort *486 gage and living expenses with commingled funds from both parties.
Finally, we reject Armao’s argument that alleged inconsistencies among the trial court’s pronouncements warrants reversal. After a post-judgment status conference, the trial court confirmed the final judgment reflected its true intent, thus resolving any alleged inconsistencies.
In sum, we affirm the trial court’s finding of the existence of an oral contract, but reverse the $750,000 award and remand for the trial court to amend the final judgment to reflect a $509,224 award. Additionally, we affirm the award of no partition credits.

Affirmed in part, reversed in part, and remanded.

Warner and Taylor, JJ., concur.

, North Dakota has stated that such agreements should be in writing, but accepts evidence other than a written agreement as evidence of written intent. Kohler v. Flynn, 493 N.W.2d 647, 649 (N.D. 1992); McKechnie v. Berg, 667 N.W.2d 628, 632 (N.D. 2003).