DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALYSSABETH KLEIN, RUSSELL KLEIN** and **TRAVIS KLEIN,**
Appellants,

v.

**ESTATE OF ELEANOR H. KLEIN, KENNETH D. KLEIN,
SYDRIA K. SCHAFFER,** and **CHRISTOPHER B. HOPKINS,**
as Curator of the Estate of Eleanor H. Klein,
Appellees.

No. 4D19-571

[April 29, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Janis Brustares Keyser, Judge; L.T. Case No. 502014CP001098XXXXMB.

Brian M. O'Connell, Ashley Crispin Ackal, Joielle "Joy" Foglietta Craig and Clara Crabtree Ciadella, of O'Connell & Crispin Ackal, PLLC, Palm Beach, for appellants.

Laura Bourne Burkhalter of Laura Bourne Burkhalter, P.A., Fort Lauderdale, for Appellee Kenneth D. Klein.

Kristen M. Fiore of Akerman LLP, Tallahassee, and Erin M. Maddocks of Akerman LLP, West Palm Beach, for Appellee Sydria K. Schaffer.

Christopher B. Hopkins and Mary F. April of McDonald Hopkins LLC, West Palm Beach for Appellee Christopher B. Hopkins.

GILLESPIE, KENNETH L., Associate Judge.

The old adage "you can't change the rules in the middle of the game" accurately sets the scene in a series of hearings conducted before the probate court giving rise to this appeal. Alyssabeth Klein, Russell Klein, and Travis Klein ("the Grandchildren") appeal a final probate order that allocated all of the proceeds derived from a legal malpractice settlement to their grandmother's estate. For the reasons discussed below, we affirm the trial court's order.

## I. FACTS

Eleanor Klein executed a pour-over will in 2009, distributing the remaining assets of her estate to a trust. Eleanor's children, Kenneth Klein and Sydria Schaffer, are each fifty percent primary beneficiaries of her trust. Kenneth's children, the Grandchildren, are contingent remainder beneficiaries of Kenneth's share of the trust.

Eleanor was predeceased by her husband, Arthur. In 2012, soon after Arthur's death, Sydria initiated an incapacity and guardianship proceeding against Eleanor. Eleanor was declared totally incapacitated and Sydria was appointed as her plenary guardian. In the incapacity and guardianship proceedings, Sydria was represented by attorney Jeffrey Janeiro, who had previously provided estate planning services to Arthur and Eleanor. After Eleanor's death in 2014, her will was admitted to probate.

In 2016, the probate court appointed a curator for the specific purpose of bringing a malpractice action on behalf of Eleanor's estate against Janeiro. Ultimately, three separate malpractice lawsuits were brought against Janeiro: (1) one by the estate; (2) one by Sydria, joined by her children, Ryan and Marielle Schaffer; and (3) one by the Grandchildren. The gravamen of each malpractice action was that Janeiro misadvised Sydria as to her fiduciary duties as Eleanor's guardian.

Rather than proceed to trial, the parties agreed to participate in mediation. At mediation, the parties to the malpractice actions, along with Kenneth, entered into a mediated settlement agreement with Janeiro. The settlement agreement provided that: (1) Janeiro and his insurer would pay the balance of his malpractice insurance policy (approximately $800,000) to the curator, who would hold the settlement proceeds in escrow in a trust account *"until there is an agreement approved by final order from the Probate Court or a final Probate Court order determining how the Settlement Amount shall be distributed"*; (2) the estate would pay $175,000 to Janeiro to be held in trust until any dispute over the settlement proceeds was resolved; (3) Janeiro would withdraw all charging liens against the parties to the settlement agreement; (4) the pending malpractice actions would be dismissed with prejudice as to Janeiro; and (5) the parties would execute a general release. The signatories all agreed "they have given and received adequate consideration in this Settlement Agreement."

In July 2018, the probate court entered an order approving the settlement agreement and directing "any and all persons that claim an interest in the Settlement Proceeds" to file a petition for determination of distribution of the settlement funds within 90 days. The order further stated that, if more than one petition for determination was filed, the

probate court would "adjudicate the rights of all parties claiming [an] interest in the Settlement Proceeds." Notably, no party objected to the procedure set forth in the probate court's order. Following the order, Kenneth, Sydria, and the Grandchildren each filed petitions for determination.

At a status conference after the petitions were filed, the parties agreed that a one-hour, non-evidentiary hearing should be set to address the competing petitions. Regarding the type of hearing to be held, Sydria's counsel proposed, "let's just have a final hearing where we can all come in, present our arguments, which have already been made by the papers to Your Honor, and get a decision." Kenneth's counsel added: "[I]f the Court reviewed those petitions and the responses and felt that an evidentiary – I guess not an evidentiary hearing, but a hearing where we needed to argue the legal points, then a hearing would be necessary." Lastly, the Grandchildren's counsel, likewise, agreed to a non-evidentiary hearing, but vaguely suggested that there were "things in the papers that I don't believe the Court can consider."

Following the status conference, the probate court entered an order scheduling the hearing and directing the parties to "file any responses or replies at least (7) seven days before the hearing." The Grandchildren filed responses in opposition to the petitions of Kenneth and Sydria. The Grandchildren maintained that they were entitled to one-third of the settlement proceeds, arguing in relevant part that: (1) absent an explicit direction in the settlement agreement, the court could order an equitable distribution only by allocating one-third of the settlement proceeds for each petition; and (2) they were intended beneficiaries of Janeiro's services and were damaged by his conduct.

The Grandchildren's response to Kenneth's petition also claimed that they were further damaged "by virtue of an assignment in anything due and owing from Eleanor's Estate or Trust to Kenneth." In a footnote, the Grandchildren explained that they had filed a lawsuit against Kenneth in which they asserted a 50% ownership interest in anything due and owing from Eleanor's Estate or Trust to Kenneth.

In their responses to both petitions, the Grandchildren alternatively moved for relief from the order approving the mediated settlement agreement, stating: "[T]o the extent this Court determines that the Grandchildren are not entitled to any portion of the Settlement Amount, the Grandchildren move this Court for relief from this Court's July 13, 2018 Order approving the Mediated Settlement Agreement pursuant to Florida Rule of Civil Procedure 1.540." The Grandchildren argued for rule 1.540 relief contending that the sum of zero dollars was insufficient

3

consideration for the releases they provided pursuant to the settlement agreement.

At the final hearing, counsel for Kenneth, Sydria, and the Grandchildren argued their respective positions relating to the allocation of the settlement proceeds. Kenneth's counsel argued that Eleanor was the intended beneficiary of Janeiro's services and that "all of the damages that have been suffered have been suffered by Eleanor's estate." Kenneth's counsel further argued that the Grandchildren lacked standing to bring a malpractice claim against Janeiro. In this vein, Kenneth's counsel argued that the Grandchildren were not intended beneficiaries of Janeiro's services because all of his services during the guardianship were strictly for the benefit of Eleanor.

The Grandchildren's counsel argued that: (1) the probate court should allocate one-third of the settlement proceeds to each malpractice action; (2) it would be "legally impossible" for the probate court "to try three legal malpractice cases" to determine how to split the proceeds, as the probate court could not "retry the cases" to "determine whose case was better"; and (3) even if the probate court were to determine the merits of each malpractice action, "it would have to be a trial where there would have to be evidence presented." Additionally, the Grandchildren's counsel argued: "[P]art of the relief that we sought was if the Grandchildren aren't going to get $1 out of a claim that they had to release against Mr. Janeiro, then they should be relieved from the Settlement Agreement, because who would settle for zero? It makes no sense."

In response, Kenneth's counsel argued that, just as a probate court has the authority to allocate proceeds from a settlement of a wrongful death case, the probate court could do the same in this case.

Following the final hearing, the probate court entered its order on the competing petitions. The probate court took judicial notice of the court file, finding that the file reflected "extraordinary legal fees and costs" borne by Eleanor's estate related to the malpractice action. The probate court also found that the parties agreed to the probate court's jurisdiction to adjudicate the rights of the parties claiming an interest in the settlement proceeds. The probate court further found that the parties agreed to the procedure for which the probate court would hear and rule on the competing petitions, that no timely objections were made to the procedure, and that any untimely objection "is deemed waived by acquiescence." Specifically, the probate court ruled that the parties "agreed that the allocation hearing would proceed to a resolution with the parties submitting and arguing their legal briefs to the probate court." Further, the probate court found the record "sufficient to conclude" that Eleanor's estate "was damaged as a result of the alleged professional malpractice of

4

Janeiro and, as a result, the entire proceeds shall be distributed to the Curator of the Estate of Eleanor H. Klein." Accordingly, the probate court granted Kenneth's petition, denied the other two petitions, and directed the escrow agent to tender the entire settlement proceeds to the curator. Upon entry of the trial court's final order, this appeal ensued.

## II. ANALYSIS

This case centers on whether the probate court has the authority to allocate proceeds of a legal malpractice suit where the parties to a settlement agreement collectively agree that the probate court would decide upon the proper allocation of the settlement funds amongst the parties. The Grandchildren's challenge to the probate court's final order boils down to two grounds: (1) the probate court failed to hear or rule on their rule 1.540 motion for relief from the order approving the settlement agreement; and (2) the probate court inappropriately tried the malpractice actions and reached an erroneous conclusion by not equally allocating the proceeds among the parties to the malpractice suits.

As to the first issue, the Grandchildren contend that the probate court incorrectly considered the merits of the parties' competing petitions without considering their rule 1.540 motion, depriving them of their fundamental right to be heard on the motion.

The issue of whether the trial court satisfied due process is reviewed de novo. *VMD Fin. Servs., Inc. v. CB Loan Purchase Assocs., LLC*, 68 So. 3d 997, 999 (Fla. 4th DCA 2011). Procedural due process requires both fair notice and a real opportunity to be heard. *Keys Citizens For Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001).

Here, the probate court's order specifically stated that it considered the Grandchildren's responses in opposition to the petitions filed by Sydria and Kenneth, wherein the Grandchildren raised their alternative request for relief under rule 1.540. The Grandchildren's request for relief under rule 1.540 was contingent upon the probate court first determining that they were not entitled to any of the proceeds. However, once the probate court made such a determination, the Grandchildren neither set their rule 1.540 motion for hearing, nor moved for rehearing of the final order to argue that the probate court should have ruled on their request to set aside the order approving the Settlement Agreement. Hence, this issue was not preserved. As such, the Grandchildren's argument that the probate court failed to rule on their 1.540 motion is not properly before this Court, as the issue was neither presented to, nor considered by, the probate court at the final hearing.

5

Notably, for an issue to be preserved for appellate review, the issue "must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). A party must also "obtain a ruling from the trial court in order to preserve an issue for appellate review." *MacDonald v. Dep't of Children & Families*, 855 So. 2d 1270, 1271 (Fla. 4th DCA 2003). However, some courts have adhered to a "presumption that a ruling inconsistent with an outstanding motion impliedly resolves that motion." *Moore v. Hartman*, 332 F. Supp. 2d 252, 255 (D.D.C. 2004); *accord Marquesa at Pembroke Pines Condo. Ass'n, Inc. v. Powell*, 183 So. 3d 1278, 1279 (Fla. 4th DCA 2016) (concluding that the trial court's failure to address the appellant's motion to amend constituted an implicit denial of the motion).

In *Alvarez v. De Lage Landen Financial Services, Inc.*, 93 So. 3d 415, 416 (Fla. 4th DCA 2012), this court held that an argument challenging the propriety of an order approving a settlement agreement was not preserved for appellate review where the appellant never requested a hearing on her motion to set aside the order and never moved for rehearing. We explained: "Even if we were to treat the motion to set aside the order approving the Settlement Agreement as a Rule 1.540(b) motion, this issue was not preserved for appellate review since an appeal was filed before the motion was heard." *Id.* Here, under *Alvarez*, the Grandchildren have not established that their challenge under rule 1.540 was preserved.

Even assuming, *arguendo*, that the probate court's order was inconsistent with the Grandchildren's outstanding rule 1.540 motion, the Grandchildren have nonetheless failed to advance any argument on appeal that this denial was substantively incorrect. "[T]he fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement." *Casto v. Casto*, 508 So. 2d 330, 334 (Fla. 1987). The consideration required to support a contract "need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee." *Dorman v. Publix-Saenger-Sparks Theatres*, 184 So. 886, 889 (Fla. 1938). A contingent benefit is sufficient consideration. *Id.* Here, the settlement agreement was clearly supported by consideration. In exchange for the Grandchildren dismissing their lawsuit, Janeiro paid a "pot of money" to which the Grandchildren could make a claim against in the probate court. To this end, the Settlement Agreement was supported by consideration, even if the Grandchildren's claim with the probate court was ultimately unsuccessful.

6

We now turn to the Grandchildren's second issue, where they contend the probate court inappropriately tried the malpractice actions, and reached an erroneous conclusion by not equally allocating the proceeds among the parties to the malpractice suits. Specifically, the Grandchildren contend that relitigation of the parties' claims was barred by the doctrine of res judicata. Further, the Grandchildren assert that the probate court essentially made an award of damages to Eleanor's estate without taking any evidence, and improperly inquiring into the parties' intent in settling the malpractice actions. Alternatively, the Grandchildren argue that they were intended beneficiaries of Janeiro's services and, therefore, were damaged by Janeiro's conduct, entitling them to a share of the settlement proceeds.

A probate court's allocation of settlement proceeds is reviewed for an abuse of discretion. *Woods v. Estate of Woods*, 770 So. 2d 1270, 1271 (Fla. 3d DCA 2000). The issue of whether res judicata applies is reviewed de novo. *Escobar v. Escobar*, 76 So. 3d 958, 960 (Fla. 4th DCA 2011). Issues of contract interpretation are reviewed de novo, provided that "the language is clear and unambiguous and free of conflicting inferences." *N. Star Beauty Salon, Inc. v. Artzt*, 821 So. 2d 356, 358 (Fla. 4th DCA 2002).

As a preliminary matter, although the Grandchildren argued below that the probate court could not "retry" the malpractice cases to "determine whose case was better," the Grandchildren never raised any specific argument based on res judicata below. The words "res judicata" are nowhere to be found in the record or in the transcript of the final hearing. Thus, to the extent that the Grandchildren's argument on appeal is based on res judicata, the issue has not been preserved. *See Robbins*, 914 So. 2d at 928. Even assuming, *arguendo*, that the Grandchildren's argument below was sufficient to preserve the res judicata argument that they now raise on appeal, the doctrine of res judicata did not bar the probate court from exercising its discretionary authority to allocate the settlement proceeds.

Res judicata bars relitigation of a claim if the following four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made. *Jasser v. Saadeh*, 103 So. 3d 982, 984 (Fla. 4th DCA 2012). However, where the parties consent to a dismissal based on a settlement agreement, "the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004).

7

In determining the res judicata effect of a settlement agreement, a court must "look to the agreement itself to determine what claims the parties intended to be finally and forever barred by the dismissal." *Ruple v. Hartford Life & Acc. Ins. Co.*, 340 Fed. Appx. 604, 610 (11th Cir. 2009). In the case at bar, the parties' settlement agreement stated that the settlement proceeds would be held in trust "until there is an agreement approved by final order from the Probate Court or a final Probate Court order determining how the Settlement Amount shall be distributed." Thus, the settlement agreement specifically contemplated that, if the various malpractice plaintiffs could not agree on a distribution of the settlement proceeds, the probate court would have the authority to allocate the settlement proceeds. As such, the procedure in the settlement agreement is consistent with the probate court's inherent authority to apportion undifferentiated settlements.

Circuit courts have "exclusive original jurisdiction" over "proceedings relating to the settlement of the estates of decedents . . . and other jurisdiction usually pertaining to courts of probate." § 26.012(2)(b), Fla. Stat. (2018). It thus follows that a probate court has the discretionary authority to divide the proceeds of a legal malpractice settlement relating to a decedent's estate. For example, a probate court has "considerable latitude" in determining how the proceeds of a wrongful death settlement should be allocated to the decedent's survivors. *Woods*, 770 So. 2d at 1271. To that end, if a wrongful death case settles and an "agreement cannot be reached on allocation of the settlement proceeds, it is the judge who must hear the evidence on such issues and who must make the decision." *Brown v. Brown*, 873 So. 2d 601, 602 (Fla. 5th DCA 2004). The judge's role is to decide what the allocation should be, not to determine "what a jury might have allocated had the wrongful death case gone to trial." *Id.* Similarly, a Maryland appellate court held that "the authority to divide the proceeds of a settlement is within the discretionary powers of the trial court," and that the parties' agreement requiring them to attempt to agree on a division or, if that failed, to petition the court to divide the settlement proceeds, was not void for vagueness. *Scamardella v. Illiano*, 727 A.2d 421, 427 (Md. Ct. Spec. App. 1999).

Here, res judicata did not bar the probate court from allocating the settlement proceeds among the various malpractice plaintiffs. Under the modified form of res judicata applicable to settlement agreements, this court must look to the settlement agreement itself to determine its res judicata effect. In this case, the settlement agreement specifically contemplated the scenario of the probate court determining the allocation of the settlement proceeds. Just as a probate court may allocate settlement proceeds from a wrongful death action, the probate court in

8

this case had the inherent authority to allocate the proceeds of the malpractice settlement.

The Grandchildren maintain that the only evidence the probate court could consider required it to distribute the settlement proceeds equally to the Grandchildren, the curator, and Sydria. However, the Grandchildren's proposed distribution was completely arbitrary. Had the settlement agreement contemplated a three-way split, it would have said so. Instead, the settlement agreement contemplated that the probate court would make the determination if the parties could not agree. Notably, it cannot be said that the probate court's ruling, determining that the entire settlement proceeds be allocated to Eleanor's estate, was inconsistent with the objective language of the settlement agreement. Indeed, nothing was improper about the probate court considering the merits of the various malpractice actions when exercising its discretion on how to allocate the settlement proceeds. In this vein, the probate court was necessarily required to consider the damages suffered by each petitioner in determining its allocation of the settlement funds.[1]

To further its efforts to reverse the trial court's path of allocating the settlement proceeds, the Grandchildren finally argue that the probate court erred by not conducting an evidentiary hearing. Although the Grandchildren's argument on this point has arguable merit, on this record, their argument is not a basis for reversal, as the issue was not preserved. When called upon to allocate settlement proceeds, the probate court's decision generally must have an evidentiary basis. *See Brown*, 873 So. 2d at 602. Similarly, a damages award "must be supported by competent substantial evidence." *Armao v. McKenney*, 218 So. 3d 481, 485 (Fla. 4th DCA 2017). "Conversely, to be liquidated, the damages alleged in the complaint must be certain without the necessity of an evidentiary hearing and the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." *Premise, Inc. v. Withlacoochee River Elec. Coop., Inc.*, 215 So. 3d 123, 124 (Fla. 2d DCA 2017) (internal quotation marks omitted). "'Reasonable attorney's fees' generally are not liquidated damages and require a hearing. Absent an evidentiary hearing, the fee award will be reversed for a hearing unless there is an indication that the right to a hearing was waived." *Petrovsky v. HSBC Bank, USA*, 185 So. 3d 700, 701 (Fla. 4th DCA 2016) (quoting *Zumpf v. Countrywide Home Loans, Inc.*, 43 So. 3d 764, 766 (Fla. 2d DCA 2010)).

---

[1] Due to the parties resolving all pending litigation via a settlement agreement, we need not address Kenneth's argument that the Grandchildren lacked standing to bring a malpractice action against Janeiro.

9

Here, although the damages suffered by Eleanor's estate were not liquidated damages (and thus ordinarily should have been proven at an evidentiary hearing), the Grandchildren waived the right to an evidentiary hearing by agreeing, in advance, to the probate court holding a non-evidentiary hearing on the allocation question. Notably, the Grandchildren did not object to the basic procedure of holding a non-evidentiary hearing until the middle of the hearing. By waiting until the hearing was well under way to object to the agreed-upon procedure, any error in failing to hold an evidentiary hearing was either waived or invited. The probate court properly ruled that "no timely objections were made to the procedure" and that "any objection asserted untimely is deemed waived by acquiescence."

*Affirmed.*

CONNER and FORST, JJ., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**